1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

VICTOR KALID JACOBO RAMIREZ, *et al.*,

        Plaintiffs-Petitioners,

    v.

KRISTI NOEM, *et al.*,

        Defendants-Respondents.

Case No. 2:25-cv-02136-RFB-MDC

**ORDER**

Before the Court is the (ECF No. 18) Motion for Preliminary Injunction by Named Plaintiffs-Petitioners Victor Kalid Jacobo Ramirez and Edgar Michel Guevara Alcantar. For the following reasons, the Court grants the Motion.

## I.    INTRODUCTION

This case is one of a rapidly growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The policy is based on a new interpretation of the Immigration

---

[1] This Court has already granted petitioners relief in fifteen similar challenges. <u>See</u>, <u>e.g.</u>, <u>Herrera v. Knight</u>, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); <u>Vazquez v. Feeley</u>, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); <u>Roman v. Noem</u>, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); <u>Carlos v. Noem</u>, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); <u>E.C. v. Noem</u>, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); <u>Perez Sanchez v. Bernacke</u>, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); <u>Aparicio v. Noem</u>, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); <u>Dominguez-Lara v. Noem</u>, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); <u>Bautista-Avalos v. Bernacke</u>, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); <u>Arce-Cervera v. Noem</u>,

and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as requiring the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention is mandatory no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects millions of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new

---

No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK, 2025 WL 3072687 (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-CV-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC (D. Nev. Nov. 7, 2025); Hernandez Duran v. Bernacke, No. 2:25-CV-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-CV-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); <u>see also</u>, <u>e.g.</u>, <u>Rodriguez v. Bostock</u>, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Named Plaintiffs-Petitioners (hereinafter "Plaintiffs") are currently detained without the opportunity for release on bond in the custody of Federal Defendants-Respondents (hereinafter "Defendants") at Nevada Southern Detention Center (NSDC), pursuant to this new detention policy. They have brought a putative class action challenging that detention policy as unlawful under the INA and Administrative Procedures Act (APA), and unconstitutional under the Due Process Clause of the Fifth Amendment. They seek a preliminary injunction on behalf of themselves individually to vindicate their statutory and due process rights to a bond hearing and to be considered for release on bond. Because the Court finds they have satisfied the requirements for such preliminary relief, the Court grants the Motion for Preliminary Injunction and enjoins Defendants from continuing to deny Plaintiffs the ability to be released on bond on the basis that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

## II.    PROCEDURAL HISTORY

The Court recites the procedural history relevant to the instant Motion. On October 30 2025, Plaintiffs filed their Verified Petition for a Writ of Habeas Corpus and Class Action Complaint against Respondents Krisi Noem, in her official capacity as Secretary of DHS; DHS; Pamela Bondi, in her official capacity as Attorney General, who administers the Department of Justice, including the Executive Office of Immigration Review (EOIR), the BIA, and the Immigration Courts; Todd Lyons, in his official capacity as the Acting Director and Senior Officer Performing the Duties of the Director of Immigration and Customs Enforcement (ICE), who is Plaintiffs' legal custodian; ICE, as Plaintiffs' legal custodian; EOIR, the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings; Jason Knight, in his official capacity as Acting Director of the

1    Salt Lake City Field Office of ICE Enforcement and Removal Operations (ERO), who operates

2    the immigration detention system and is a custodian of immigration detainees held in Nevada;

3    John Mattos, in his official capacity as Warden of NSDC; and the Las Vegas Immigration Court,

4    which is the adjudicatory body within the EOIR with jurisdiction over the removal and bond

5    proceedings of Plaintiffs and putative class members. ECF No. 1.

6        On October 31, 2025, this case was transferred to the undersigned Judge as related to two

7    pending putative class actions pending before the Court. ECF No. 3. On November 6, 2025,

8    Petitioners filed the instant Motion for Preliminary Injunction, which requested expedited briefing.

9    ECF No. 18. On November 7, 2025, the Court set a deadline of November 12, 2025 at 12:00 p.m.

10   for Defendants' response. ECF No. 19. Defendants did not file any response by that deadline or

11   seek an extension. On November 13, 2025, the Court held a hearing on the Motion and informed

12   the parties it would issue its ruling without a response from Defendants, which would incorporate

13   Defendants' arguments in opposition that the Court has previously addressed in related matters.

14   ECF No. 23. The Court permitted Defendants to file a response by the end of the day. Id.

15   Defendants filed their Opposition later that day, which incorporated by reference their arguments

16   in prior filings in Sanchez Aparicio v. Kristi Noem, Case No. 2:25-cv-01919-RFB-DJA (ECF No.

17   14), Berto Mendez v. Kristi Noem, Case No. 2:25-cv-02062-RFB-MDC (ECF No. 14),

18   Dominguez-Lara v. Noem, Case No. 2:25- cv-01553-RFB-BNW (ECF No. 17), and Alvarado

19   Gonzalez v. Kristi Noem, Case No. 2:25-cv-01599-RFB-NJK (ECF No. 18). ECF No. 23. On

20   November 17, 2025, Plaintiffs filed their Reply. ECF No. 26. On November 19, 2025, counsel for

21   Defendant John Mattos filed a notice of appearance, and Joinder to Defendants' Opposition to the

22   Motion for Preliminary Injunction. ECF Nos. 27, 29.

23       The Court's Order follows.

24

25   **III.    BACKGROUND**

26       **A.  Legal Background**

27       The Court fully incorporates by reference the legal background regarding the government's

28   detention authority and removal proceedings under the INA, as well as the government's

challenged new mandatory detention policy, set forth in its ruling in <u>Escobar Salgado</u>, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025).

The Court makes the following findings of fact relevant to each Plaintiff's individual circumstances.

### B. Named Plaintiffs

#### 1. Plaintiff Jacobo-Ramirez

Mr. Jacobo-Ramirez has resided in the United States since 2002, when he entered the country as a minor. <u>See</u> ECF No. 18-1 at ¶ 8. In 2012, Mr. Jacobo-Ramirez applied for Deferred Action for Childhood Arrivals (DACA), which was approved, and he maintained that status until 2024. <u>Id.</u> at ¶ 9. He currently resides in Las Vegas with his wife and six-year-old daughter who are both U.S.-born citizens. <u>Id.</u> at ¶ 8. He has never had any prior contact with immigration authorities. <u>Id.</u> at ¶ 13.

According to Defendants,[4] on August 17, 2025, ICE Enforcement and Removal Operations (ERO) was notified that Mr. Jacobo-Ramirez was detained at the Las Vegas Detention Center and lodged an immigration detainer. ECF No. 22 at 2. ICE arrested Mr. Jacobo-Ramirez in the Las Vegas jail on August 18, 2025, after he was released on his own recognizance on charges of driving under the influence and traffic offenses. ECF No. 18-1 at ¶¶ 10-11. He has no criminal convictions and no other criminal charges pending. <u>Id.</u> at ¶ 14. ICE Mr. Jacobo-Ramirez is currently in removal proceedings before the Las Vegas Immigration Court pursuant 8 U.S.C. § 1229a. <u>Id.</u> at ¶ 15. ICE has charged him with, *inter alia*, being inadmissible as "an alien present in the United States without being admitted or paroled" pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). <u>Id.</u> at ¶ 13. The I-213 form issued by DHS about him states that he entered without inspection. <u>Id.</u>

On September 3, 2025, Mr. Jacobo-Ramirez appeared for a custody redetermination hearing before Immigration Judge ("IJ") Daniel J. Daugherty in Las Vegas, Nevada. <u>Id.</u> at ¶ 16. In that hearing, the IJ agreed that Mr. Jacobo-Ramirez posed no flight risk or danger and granted

---

[4] The Court recounts the statement of facts asserted by Defendants' counsel in their Opposition to the Motion for Preliminary Injunction. <u>See</u> ECF No. 22 at 2-4. The Court notes, however, that they provide no evidentiary support of their factual assertions, such as documents or a declaration.

release on bond of $7,500. Id. He subsequently paid the bond and was released from DHS custody. Id. at ¶ 17. However, on September 12, 2025, DHS filed, and on October 3, 2025, the IJ granted a motion to reconsider and rescind the bond based on the BIA's decision in Hurtado, rendering him subject to detention under 8 U.S.C. § 1225(b)(2). Id. at ¶ 18; ECF No. 22 at 3. On October 7, 2025, Mr. Jacobo-Ramirez was rearrested by ICE ERO when he reported for a scheduled check-in. ECF No. 18-1 at ¶ 19; ECF No. 22 at 3. Mr. Jacobo-Ramirez has remained in detention in Pahrump, Nevada, since October 7, 2025. ECF No. 18-1 at ¶ 19.

### 2.   Plaintiff Guevara-Alcantar

Like Mr. Jacobo-Ramirez, Mr. Guevara-Alcantar entered the United States as a minor nearly a decade ago. Id. at ¶ 20. On July 26, 2019, Mr. Guevara-Alcantar was a victim of battery with a deadly weapon which qualifies as a felonious assault for the purposes of obtaining a U-Visa. Id. at ¶ 22. On December 2, 2023, he was granted deferred action from removal after United States Citizenship and Immigration Services (USCIS) found his U-Visa application was *bona fide*. Id. at ¶ 22. According to Defendants, he has valid employment authorization until March 11, 2028. ECF No. 22 at 4. He has never had any prior contact with immigration authorities. ECF No. 18-1 at ¶ 25. He has deep ties to Nevada, as he currently resides in Las Vegas with his partner and four-year-old daughter, who is a U.S.-born citizen. Id. at ¶ 20. Prior to his detention, Mr. Guevara-Alcantar supported his family financially and shared custody of his daughter with her mother. Id. at ¶ 20. His detention has caused financial strain for both his current partner and the mother of his child. Id. at ¶¶ 20, 29.

According to Defendants, on August 24, 2025, ERO Salt Lake City was notified that Mr. Guevara-Alcantar was detained at the Las Vegas Detention Center and lodged an immigration detainer. ECF No. 22 at 4. ICE arrested Mr. Guevara-Alcantar in the Las Vegas jail on August 26, 2025, upon his release from state custody after the district attorney declined to prosecute a domestic violence charge. ECF No. 18-1 at ¶¶ 23-24. He has no other criminal record. Id. at ¶ 26. While in ICE custody, Mr. Guevara-Alcantar sustained an injury to his shoulder after he slipped and fell. Id. at ¶ 30. The injury has caused him a lot of pain, and he has not regained full movement of the injured area. Id.

1   ICE charged Mr. Guevara-Alcantar with, *inter alia*, being inadmissible as "an alien present

2   without inspection or parole" under 8 U.S.C. § 1182(a)(6)(A)(i), and DHS placed Mr. Guevara-

3   Alcantar in removal proceedings before the Las Vegas Immigration Court pursuant 8 U.S.C. §

4   1229a. ECF No. 22 at 4. According to Defendants, he was first detained in ICE custody at

5   Henderson Detention Center from August 26, 2025 until September 2, 2025, and was transferred

6   to NSDC, where he has remained detained since. ECF No. 22 at 4; see also ECF No. 18-1 at ¶ 28.

7   He has not had a bond hearing before an immigration judge because of Defendants' policies. See

8   id.

9

10   **IV.    LEGAL STANDARDS**

11   **A. Preliminary Injunction**

12   Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary

13   injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an

14   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

15   to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such

16   relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that

17   the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the

18   balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells

19   Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended

20   (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

21   The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious

22   questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011)

23   (affirming the continued viability of this doctrine post-Winter). According to this test, "serious

24   questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can

25   support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

26   likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts

27   in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one

28   element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856

1    F.3d 666, 669 (9th Cir. 2017).

2        **B.  § 2441 Petition for Writ of Habeas Corpus**

3        The Constitution guarantees that the writ of habeas corpus is "available to every individual
4    detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S.
5    Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is
6    to provide an effective and speedy instrument by which judicial inquiry may be had into the legality
7    of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of
8    habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the
9    traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411
10    U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates
11    that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).
12    Historically, "the writ of habeas corpus has served as a means of reviewing the legality of
13    Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St.
14    Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes
15    challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see
16    also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025)
17    (describing immigration detainees' challenge to their confinement and removal as falling "within
18    the 'core' of the writ of habeas corpus.") (per curiam) (citations omitted). "The application for the
19    writ usurps the attention and displaces the calendar of the judge or justice who entertains it and
20    receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208
21    F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

22

23      **V.    DISCUSSION**

24        **A.  Jurisdiction**

25        In their incorporated briefing, Defendants assert the Court lacks jurisdiction over Plaintiffs'
26    habeas challenge to the lawfulness of their detention under 8 U.S.C. § 1252(g), (b)(9), and (a)(5).
27    As this Court has previously ruled, and which is incorporated by reference herein, Defendants'
28    arguments under those jurisdiction stripping provisions of the INA are foreclosed by Ninth Circuit

1    and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-10.

2         To reiterate, the basic federal habeas corpus statute grants this Court authority to resolve

3    Plaintiffs' challenge to the lawfulness of their detention, and none of the jurisdiction stripping

4    provisions of the INA apply to Plaintiffs' challenge to Defendants' detention policy before this

5    Court. See Zadvydas, 533 U.S. at 699 (citing 28 U.S.C. § 2241(c)(3) (granting courts authority to

6    determine whether detention is "in violation of the . . . laws . . . of the United States").

7         **B.  Administrative Exhaustion**

8         In their incorporated briefing, Defendants argue the Court should dismiss this case because

9    Plaintiffs have not exhausted their administrative remedies. "Exhaustion can be either statutorily

10   or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional,

11   but courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994,

12   998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the

13   INA require petitioners to exhaust administrative remedies before filing petitions for habeas

14   corpus. Id. (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).

15        A court may require prudential exhaustion if: "(1) agency expertise makes agency

16   consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of

17   the requirement would encourage the deliberate bypass of the administrative scheme; and (3)

18   administrative review is likely to allow the agency to correct its own mistakes and to preclude the

19   need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however

20   waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit

21   of administrative remedies would be a futile gesture, irreparable injury will result, or the

22   administrative proceedings would be void." Laing, 370 F.3d at 1000. Plaintiffs bear the burden of

23   demonstrating at least one of the Laing factors applies. See Ortega-Rangel v. Sessions, 313

24   F.Supp.3d 993, 1003 (9th Cir. 2018).

25        First, the Court finds exhaustion would be futile. In Hurtado, the BIA adopted the

26   government's new interpretation of § 1225(b)(2) and held IJs have no authority to consider bond

27   for any individual who entered the country without inspection. That is why IJ Daugherty rescinded

28   Plaintiff Jacobo-Ramirez's bond. If he appealed that decision, the BIA would uphold IJ Daugherty

- 9 -

's rescission of bond pursuant to Hurtado. The same is true for Plaintiff Guevera-Alcantar—if he were to request a bond hearing, his request would be denied under Hurtado, and the BIA would uphold that decision under Hurtado. So, exhaustion of Plaintiffs' administrative remedies would be futile. See Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.")

Additionally, considering Plaintiffs' due process challenge to their detention without the opportunity for release on bond, this matter falls into the futility exception to the exhaustion requirement "carved for constitutional challenges to ... [DHS] procedures." Iraheta-Martinez v. Garland, 12 F.4th 942, 949 (9th Cir. 2021) (quoting Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam)) (alterations in original)). As to procedural due process claims in particular, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Sola, 720 F.3d at 1135; see also Matter of G.K., 26 I. & N. Dec. 88, 96-97 (BIA 2013) (explaining that "[n]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]").

In addition to futility, the Court notes the Puga factors also weigh against requiring prudential exhaustion, because (1) neither agency expertise nor an administrative appellate record is necessary to determine the purely legal questions presented by Plaintiffs' challenge to the government's new mandatory detention policy; (2) the deliberate bypass of administrative procedures cannot be avoided where the BIA has adopted a reinterpretation of the INA which upended decades of settled agency practice, and the class-wide relief requested by Plaintiffs would remediate the concerns regarding judicial efficiency; and (3) administrative review will not result in the agency correcting its own mistake, as the BIA has adopted DHS and the DOJ's interpretation of the INA. See, e.g., Hernandez v. Sessions, 872 F.3d 976, 988-89 (9th Cir. 2017) (holding prudential exhaustion was properly waived where an administrative appellate record "is not necessary to resolve the purely legal questions presented" by the plaintiffs' "challenge to the

government's policy," resolving those questions would reduce the need for bypass of administrative procedures, and the BIA's position on the legal questions was already set).

Finally, requiring Plaintiffs to be subjected to unconstitutional detention pending the BIA's decision would cause irreparable harm, which is a separate basis to waive exhaustion under <u>Laing</u>. <u>See</u> <u>Rodriguez v. Robbins</u>, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing). Because Plaintiffs' constitutional challenge to their detention is necessarily beyond the scope of the BIA's review, the BIA's position on the statutory question is already determined against Plaintiffs under <u>Hurtado</u>, and awaiting the BIA's decision would result in irreparable harm to Plaintiffs, prudential administrative exhaustion is excused as futile.

**C. Preliminary Injunction**

The Court now turns to the analysis of whether Petitioner has satisfied the requirements for preliminary injunctive relief. As discussed below, because the Court finds Plaintiffs are likely to succeed on the merits of their claims and the remaining <u>Winter</u> factors weigh strongly in their favor, the Court finds Plaintiffs are entitled to preliminary relief.

**1.  Likelihood of Success or Serious Questions**

First, the Court finds Plaintiffs have satisfied the most important <u>Winter</u> factor: they are likely to succeed on the merits of their claims that their detention is unlawful, because (1) § 1226(a), not § 1225(b)(2), applies to them, and therefore their detention without the opportunity for release on bond violates the INA and its implementing regulations and (2) Defendants' continued detention of Plaintiffs without any individualized justification violates their procedural and substantive due process rights.[5] <u>See</u> <u>Matsumoto v. Labrador</u>, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); <u>see also</u> <u>Baird v. Bonta</u>, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

---

[5] The Court does not reach the merits of Plaintiffs' challenge under the APA because it has not yet been fully briefed.

**i.  *The Lawfulness of Plaintiffs' Detention Under the INA***

The Court fully incorporates by reference its reasoning and holding regarding Respondents' new interpretation of § 1225(b)(2) from Escobar-Salgado. WL 3205356, at *10-26. As it did in Escobar-Salgado, the Court rejects Respondents' statutory interpretation here and finds Plaintiffs in this case are detained under § 1226(a) and its implementing regulations, because they are "longtime U.S. residents, who were arrested and detained by ICE far from any port of entry." Id. at 22.

Defendants assert the Court should reconsider its rejection of the government's new interpretation of § 1225(b)(2) and instead follow the minority of district courts that have denied relief to similarly situated immigration detainees. See ECF No. 22 at 5 (citing Pena v. Hyde, No. 25-11983, 2025 WL 2108913 (D. Mass. July 28, 2025); Chavez v. Noem, No. 25-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); Vargas Lopez v. Trump, No. 25-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); Barrios Sandoval v. Acuna, No. 25-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); Silva Oliveira v. Patterson, No. 25-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); Mejia Olalde v. Noem, No. 25-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025)).

The Court is not persuaded. Each of those decisions fail to comprehensively engage with the statutory text and structure consistent with fundamental canons of statutory interpretation, as discussed by this Court in Escobar Salgado. 2025 WL 3205356, at *10-26. Further, some rely on the government's inaccurate portrayal of the legislative history of IIRIRA. Compare, e.g., Altamirano Ramos v. Lyons, No. 2:25-CV-09785-SVW-AJR, 2025 WL 3199872, at *8 (C.D. Cal. Nov. 12, 2025), Sandoval, 2025 WL 3048926 at *6, and Silva Oliveira, 2025 WL 3095972 at *6 with Escobar Salgado, 2025 WL 3205356, at 17-20 (finding that "a review of this legislative history as discussed by the Ninth Circuit in Torres, and in the portions of the House Report cited by [the government], reveals that Congress sought to address" the so-called "entry doctrine" "anomaly" "in the context of removal proceedings under the INA—by consolidating the formerly bifurcated deportation and exclusion proceedings—with no mention of any intent to alter detention authority under the INA.") (citing Torres v. Barr, 976 F.3d 918, 928 (9th Cir. 2020)).

Finally, those district courts have not reconciled the canon of constitutional avoidance[6] with the fact that their reading would render § 1225(b)(2) unconstitutional as applied to noncitizens like Plaintiffs, "who have established connections in this country." See Escobar Salgado, WL 3205356 at *20-21 (citing Dept. of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020); Torres, 976 F.3d at 923 (the INA is to be read "against the backdrop of our constitutional principles")). The district courts that have endorsed the government's reading fail to address the "well established" precedent that "runs throughout immigration law" and recognizes that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 692-93 (citations omitted).

Accordingly, the Court continues to join the majority of district courts that have rejected the government's new detention policy. See ECF No. 26 at 4-10 (citing over 200 cases rejecting the government's position since Hurtado).

### ii. *Due Process*

Plaintiffs also challenge their ongoing detention without the opportunity for release on bond as unconstitutional under the Due Process Clause of the Fifth Amendment. For the following reasons, the Court finds Plaintiffs are being detained in violation of their procedural and substantive due process rights.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. CONST., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., J.G.G., 604 U.S. at 673 (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings . . .'") (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to all 'persons' within the

---

[6] Courts have failed to address the constitutionality of Defendants' statutory interpretation, even where habeas petitioners have brought separate challenges to their detention without a bond hearing under the Due Process Clause. See, e.g., Chavez, 2025 WL 2730228, at *1 (S.D. Cal. Sept. 24, 2025) (acknowledging that the petitioners' claimed that their detention under § 1225(b)(2) violates procedural due process, but failing, without explanation, to consider that claim); Silva Oliveira, 2025 WL 3095972, at 2 (same).

United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) (accord).

Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due process, meaning "notice and opportunity to be heard appropriate to the nature of the case." J.G.G., 145 S.Ct. at 1006 (internal quotation marks omitted); see also A. A. R. P. v. Trump, 605 U.S. 91 (2025). "'Procedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" Id. (quoting Carey v. Piphus, 435 U.S. 247, 259 (1978)). Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government. Immigration detention is civil detention, and civil detention violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

Even if the Court were to accept the government's new reading of § 1225(b)(2), it would still be faced with Plaintiffs' due process challenge to their detention without an individualized bond hearing. Indeed, the Ninth Circuit has questioned the constitutionality of § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so.

> Arbitrary civil detention is not a feature of our American government.

Rodriguez v. Marin, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

Defendants fail to meaningfully address Plaintiffs' challenge to the lawfulness of their detention under the Due Process Clause. To the extent Defendants assert the Supreme Court has upheld mandatory detention for certain classes of noncitizens, including noncitizens convicted of aggravated felonies, and noncitizens seeking entry or "initial entrants" into the country, those cases are inapposite when applied to noncitizens like Plaintiffs, who lack criminal convictions under § 1226(c) and have established connections to our country. See Escobar Salgado, 2025 WL 3205356 at *23-24 (discussing Defendants misplaced reliance on Thuraissigiam and Demore). The Court now turns to the likelihood of success on the merits of Plaintiffs' due process challenge to their detention.

### 1.   Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Plaintiffs without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Plaintiffs' interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is

the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Plaintiffs' liberty interests are not diminished by any final order of removal, or the availability of any existing process to challenge Defendants' decision to detain them without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances). The first Mathews factor thus weighs heavily in Plaintiffs' favor.

Second, the Court considers "the risk of an erroneous deprivation of [Plaintiffs'] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Plaintiffs to challenge their detention pending the conclusion of removal proceedings, because Hurtado deprives immigration courts of jurisdiction to consider any such challenge. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Plaintiffs without any individualized showing of why this detention is warranted, nor any process for Plaintiffs to challenge the exercise of that discretion. The near certainty of erroneous deprivation caused by this lack of process is demonstrated by the fact that an IJ held a bond hearing for Plaintiff Jacobo-Ramirez prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for his detention without bond. Likewise, given that Plaintiff Guevara-Alcantar, like Jacobo-Ramirez, has no criminal charges or convictions, has deep financial, familial, and community ties in the country, and that Defendants have not asserted he is dangerous or a flight risk, it is very likely that he is being arbitrarily and unjustifiably deprived of his liberty.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, i.e., a bond hearing, like the one Plaintiff Jacobo-Ramirez received prior to

Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Plaintiffs' liberty, because they require the government to establish that Plaintiffs present a flight risk or danger to the community to continue their detention for the pendency of removal proceedings. These procedures enforce the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Plaintiffs could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing is subject to "numerous levels of review, each offering [Plaintiffs] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of § 1226(a) would render "the risk of erroneous deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also weighs heavily in favor of granting Plaintiffs the procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Plaintiffs is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532–33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

1      Further, the Court finds that limiting the use of detention to only those noncitizens who are

2  dangerous or a flight risk through existing bond procedures serves the government and public's

3  interest by *reducing* the fiscal and administrative burdens attendant to immigration detention.

4  Hernandez, 872 F.3d at 996 (Noting in 2017 that "the costs to the public of immigration detention

5  are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million.

6  Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each

7  day per person.").

8      In sum, the Court finds the Mathews factors weigh heavily in favor of Plaintiffs, and

9  therefore, their detention without the opportunity for release on bond violates their procedural due

10  process rights.

11                   2.  Substantive Due Process

12      Immigration detention violates the Due Process Clause unless it is ordered in a criminal

13  proceeding with adequate procedural protections, or in non-punitive circumstances "where a

14  special justification . . . outweighs the individual's constitutionally protected interest in avoiding

15  physical restraint." Zadvydas, 533 U.S. at 690.

16      Defendants have asserted no individualized justification—let alone a special or compelling

17  justification—to continue to deprive Plaintiffs of their physical liberty. Such indifference from the

18  executive branch to the Constitution's guarantee of freedom from arbitrary confinement is grave

19  cause for concern. Accordingly, this Court further finds that Plaintiffs are likely being detained in

20  violation of their substantive due process rights.

21                  **2.  Irreparable Harm**

22      The next factor requires a showing "that irreparable harm is likely, not just possible" in the

23  absence of preliminary injunctive relief. All. for the Wild Rockies, 632 F.3d at 1131. "It is well

24  established that the deprivation of constitutional rights 'unquestionably constitutes irreparable

25  injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427

26  U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that Plaintiffs'

27  detention without the opportunity for release on bond violates their due process rights that they

28  have carried their burden as to irreparable harm. Hernandez, 872 F.3d at 995. The Ninth Circuit

has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### 3. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting Nken, 556 U.S. at 435). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The government asserts the Court should refrain from intervening due to the government's interest in enforcing immigration law. The Court finds that interest is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Plaintiffs is warranted to an immigration judge. The Court merely enjoins Defendants from asserting Plaintiffs are subject to mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

Further, the government's new reading of the INA upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention who have hitherto been afforded release on bond. The attendant administrative, fiscal, and social costs of such a mass detention policy are difficult to fathom. Therefore, it is doubtful that this policy supports the government's interest in steady enforcement of the INA. Moreover, it is the government's new reading of the INA which subjects millions of individuals to mandatory detention that is creating

1    the significant fiscal and administrative burden on the government. However, this is a burden of

2    the executive branch's choosing, which is unilaterally being imposed on the public.

3            Further, Defendants' claim that an injunction would burden the government because

4    judicial intervention would disrupt the *status quo* fails, because the *status quo* for purposes of a

5    preliminary injunction refers "not simply to any situation before the filing of a lawsuit, but instead

6    to the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt

7    Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000). The *status quo* thus precedes DHS and DOJ's

8    July 8, 2025 change in policy—in other words, the *status quo* is that § 1226(a) applies to Plaintiffs

9    and noncitizens similarly situated. As such, the burden on the government is minimal because the

10   preliminary injunction simply preserves the *status quo*.

11           In contrast, the hardships faced by Plaintiffs and the public interest in granting injunctive

12   relief weigh strongly in their favor. Detention has separated Plaintiffs from their family,

13   employment, and community and imposed increased financial, caregiving, and emotional burdens

14   on Plaintiff Jacobo-Ramirez's U.S. citizen wife and 5-year-old U.S. citizen daughter, and Plaintiff

15   Guevera-Alcantar's four-year-old U.S. citizen daughter and her mother, as well as his partner.

16   Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiffs] in the

17   absence of the injunction, the court may consider the indirect hardship to their friends and family

18   members) (quotation marks and citation omitted). And because the Court has found it is likely that

19   Defendants are unlawfully detaining Plaintiffs under § 1225(b)(2) and in violation of the

20   Constitution, "neither equity or the public interest are furthered" by allowing Defendants to

21   continue to violate the law—quite the opposite. See Galvez, 52 F.4th at 832; Hernandez, 872 F.3d

22   at 996 ("The public interest benefits from an injunction that ensures that individuals are not

23   deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional

24   process.").

25           As such, this Court finds the balance of the equities and public interest "tip sharply

26   towards" Plaintiffs. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser

27   showing that Plaintiffs have raised only "serious questions going to the merits" of their challenge

28   to their detention, Plaintiffs are entitled to a preliminary injunction. Id.

**D.  Scope of Relief**

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas, 391 U.S. at 238. "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Plaintiff Jacobo-Ramirez—revocation of bond and re-detention, after a constitutionally adequate bond hearing established that his continued detention was not warranted—is remedied by ordering his immediate release, subject to the bond conditions imposed by IJ Daugherty on September 3, 2025, and enjoining Defendants from preventing his release on the basis that he is detained under § 1225(b)(2).

The Court finds that the specific harm suffered by Plaintiff Guevara-Alcantar—detention without a constitutionally adequate bond hearing pursuant to the government's unlawful policy—is remedied by ordering Defendants to provide him a bond hearing under § 1226(a) and its implementing regulations. The Court sets a seven-day deadline because it finds Mr. Guevara-Alcantar has been unlawfully detained without a hearing for over ten weeks. The Court finds that if a bond hearing is not provided promptly, no later than December 1, 2025, Defendants must release Mr. Guevara-Alcantar until it is determined that his detention is warranted under § 1226(a). See, e.g., Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days); Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same).

///

### E.  Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that releasing Mr. Jacobo-Ramirez on bond or providing Mr. Guevara-Alcantar a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to impose bond beyond any bond amount imposed by an IJ under § 1226(a).

### VI.    CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction (ECF No. 18) is **GRANTED**. Defendants are **ORDERED** to:

(1) **IMMEDIATELY RELEASE** no later than **7:00 p.m. on November 24, 2025**. Plaintiff's release will be subject to the bond conditions imposed by IJ Daugherty. Plaintiff Jacobo-Ramirez will have until **December 5, 2025** to satisfy the bond conditions. If he fails to do so, he will be subject to rearrest and redetention under 8 U.S.C. § 1226(a).

(2) **PROVIDE** Plaintiff Guevara-Alcantar with a bond hearing pursuant to 8 U.S.C. § 1226(a) and its implementing regulations within seven (7) days, no later than **December 1, 2025**. If the individualized bond hearing is not conducted by **December 1, 2025**, Plaintiff shall be **RELEASED** until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that Defendants are **ENJOINED** from denying Plaintiffs release on bond on the basis that they are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that the parties shall file a joint status report by **December 3, 2025**, confirming Defendants' compliance with this Order. The status report shall detail if and when Plaintiff Guevara-Alcantar's bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** November 24, 2025.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**