1

2

3

4                          **UNITED STATES DISTRICT COURT**

5                                **DISTRICT OF NEVADA**

6                                          * * *

7    VICTOR KALID JACOBO RAMIREZ, *et*          Case No. 2:25-cv-02136-RFB-MDC
     *al*., on behalf of themselves and others
8    similarly situated,                              **ORDER**

9                  Plaintiffs-Petitioners,

10         v.

11

12   KRISTI NOEM, *et al*.,

13                  Defendants-Respondents.

14         Before the Court is Plaintiffs-Petitioners' (ECF No. 15) Motion for Class Certification and

15   Appointment of Class Counsel, and Defendants-Respondents' (ECF No. 39) Response to Verified

16   Petition for a Writ of Habeas Corpus and Class Action Complaint. For the following reasons, the

17   Court denies dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), certifies the

18   proposed class, and appoints class counsel.

19

20   **I.    INTRODUCTION**

21         Plaintiffs-Petitioners ("Named Plaintiffs"), on behalf of themselves and the class they seek

22   to represent (collectively "Plaintiffs"), bring this action to challenge the recently adopted policies

23   of Defendants-Respondents ("Defendants" or "the government") which subject them and hundreds

24   of other similarly situated noncitizens to prolonged, unreviewable detention in the District of

25   Nevada. These policies are based on an assertion that all noncitizens residing in the United States

26   who entered the country without inspection or parole by an immigration officer at a designated

27   port of entry are categorically ineligible for an individualized hearing ("custody redetermination"

28   or "bond hearing") during the pendency of their removal proceedings. The government's policies

deprive these individuals of the ability to require the government to establish that their detention is justified to an immigration judge (IJ) or be released on bond while their removal proceedings are adjudicated.

The government's challenged policies have led to a flood of individual habeas petitions before this Court,[1] and federal courts across the country.[2] These mass immigration detention policies are based on the executive branch's reinterpretation of the statutory text of the Immigration and Nationality Act (INA), specifically 8 U.S.C. § 1225(b)(2)(A), to require the detention of millions of immigrants residing in this country, in contravention of decades of consistent agency

[1] In addition to granting individualized preliminary injunctive relief on behalf of Named Plaintiffs, see ECF No. 25, this Court has granted individualized relief—both preliminary and on the merits—to habeas petitioners in well over sixty similar challenges and counting. See Livia Vicharra v. Henkey, 2025 WL 3564725, at *1 n.1 (D. Nev. Dec. 12, 2025) (collecting 43 cases); Padilla Perez v. Noem, No. 2:25-CV-02399-RFB-DJA, 2025 WL 3720266 (D. Nev. Dec. 23, 2025); Banuelos v. Bondi, No. 2:25-CV-02483-RFB-BNW, 2025 WL 3722988 (D. Nev. Dec. 23, 2025); Ramirez v. Henkey, No. 2:25-CV-02446-RFB-MDC, 2025 WL 3724867 (D. Nev. Dec. 24, 2025); Hernandez v. Noem, No. 2:25-CV-02486-RFB-NJK, 2025 WL 3765102 (D. Nev. Dec. 30, 2025); Bracho v. Henke, No. 2:25-CV-02531-RFB-NJK, 2025 WL 3771395 (D. Nev. Dec. 31, 2025); Garcia Covarrubias v. Holston, No. 2:25-CV-02445-RFB-DJA, 2026 WL 25970 (D. Nev. Jan. 5, 2026); Perez-Regalado v. Feeley, No. 2:25-CV-02409-RFB-EJY, 2026 WL 36112 (D. Nev. Jan. 6, 2026); Garcia v. Mattos, No. 2:25-CV-02580-RFB-NJK, 2026 WL 103032 (D. Nev. Jan. 14, 2026); In re Rojas, No. 2:25-CV-02548-RFB-BNW, 2026 WL 125152 (D. Nev. Jan. 16, 2026); Rojas-Lara v. United States, No. 2:25-CV-02544-RFB-EJY, 2026 WL 172676 (D. Nev. Jan. 22, 2026); Juarez Salvador v. Noem, No. 2:26-CV-00043-RFB-BNW, 2026 WL 191183 (D. Nev. Jan. 25, 2026); Posada v. Noem, No. 2:26-CV-00050-RFB-BNW, 2026 WL 194715 (D. Nev. Jan. 26, 2026); Doreteo-Chavez v. Noem, No. 2:26-CV-00049-RFB-DJA, 2026 WL 222301 (D. Nev. Jan. 28, 2026); Cegueda Pedraza v. Noem, No. 2:26-CV-00051-RFB-NJK, 2026 WL 222362 (D. Nev. Jan. 28, 2026); Mora-Silva v. Noem, No. 3:26-CV-00032-RFB-CLB, 2026 WL 242442 (D. Nev. Jan. 29, 2026); Garcia Nicolas v. Mattos, No. 2:26-CV-00100-RFB-MDC, 2026 WL 272457 (D. Nev. Feb. 2, 2026); Villatoro Dominquez v. Noem, No. 2:26-CV-00172-RFB-NJK, 2026 WL 272462 (D. Nev. Feb. 2, 2026); Mendez Rodriguez v. Noem, No. 2:26-CV-00048-RFB-MDC, 2026 WL 280625 (D. Nev. Feb. 3, 2026); Lopez Lopez v. Noem, No. 2:26-CV-00047-RFB-EJY, 2026 WL 280564 (D. Nev. Feb. 3, 2026).

[2] See, Kyle Cheney, Hundreds of judges reject Trump's mandatory detention policy, with no end in sight, Politico (Jan. 1, 2026, 5:55 AM EST), https://www.politico.com/news/2025/11/28/trump-detention-deportation-policy-00669861 [https://perma.cc/KAA4-Y8YF] (finding more than 300 federal judges in over 1,600 cases across the country have rejected the government's new detention policy, with over 100 new lawsuits filed daily, while 14 federal judges have found in favor of the government's position).

practice[3] and agency regulations,[4] which hitherto guaranteed noncitizen residents the right to a bond hearing and associated due process protections under 8 U.S.C. § 1226(a).

The first policy challenged by Plaintiffs was adopted by the Department of Homeland Security (DHS) on a nationwide basis on July 8, 2025, through an internal "Interim Guidance" memorandum issued by Todd Lyons, as Acting Director of Immigration and Customs Enforcement (ICE) ("Lyons Memo") to all ICE employees.[5] The Lyons Memo declared that DHS, in connection with the Department of Justice (DOJ), had "revisited its legal position" and decided that § 1225(b), not § 1226(a), is the applicable detention authority for any noncitizen charged with being present in the country without inspection or parole, and directed all ICE agents to arrest and detain such noncitizens without bond.[6]

The second challenged policy was adopted by the Executive Office for Immigration Review (EOIR), within the DOJ, on September 5, 2025, when the Board of Immigration Appeals (BIA) issued a precedential decision adopting the new interpretation of 8 U.S.C. § 1225(b)(2)(A), described in the Lyons Memo. See Matter of Yajure Hurtado, 29 I.&N. Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, IJs no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who DHS alleges entered unlawfully. See id. Despite the Central

---

[3] See, e.g, Castanon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, 2025 WL 3552514, at *10 n.3 (7th Cir. Dec. 11, 2025) (noting that DHS's "recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice.) (citing Hasan v. Crawford, --- F.Supp.3d ---, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *9 (E.D. Va. Sept. 19, 2025) (Before July 8, 2025 'DHS's long-standing interpretation has been that § 1226(a) applie[d] to those who have crossed the border between ports of entry and are shortly thereafter apprehended.'") (quoting Transcript of Oral Argument at 44:24-45:2, Biden v. Texas, 597 U.S. 785 (2022) (No. 21-954) (quoting the Solicitor General)).

[4] See 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

[5] The memo was first reported to the public by the Washington Post on July 15, 2025. See Ted Hesson and Kristina Cooke, US launches new bid to keep migrants detained by denying hearings, memo shows, Reuters (July 15, 2025 at 2:03 AM PDT), https://www.reuters.com/world/us/us-launches-new-bid-keep-migrants-detained-by-denying-hearings-memo-shows-2025-07-15/, [https://perma.cc/US6Z-EXBR].

[6] The only copy of the Lyons Memo available to the Court and the public is a photograph of a computer screen. See ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission, [https://perma.cc/5GKM-JYGX].

1   District of California certifying a nationwide class and entering a class-wide declaratory judgment

2   that found the government's statutory interpretation in Hurtado unlawful, an email leaked to the

3   public shows that EOIR Chief Immigration Judge Teresa L. Riley issued nationwide guidance on

4   January 13, 2026 instructing immigration judges to continue to follow Hurtado as binding

5   precedent.[7]

6          The overwhelming majority of district courts across the country, including this Court, that

7   have considered the government's new statutory interpretation of § 1225(b)(2)(A) have found it

8   incorrect and unlawful. See Escobar Salgado v. Mattos, --- F. Supp. 3d ---, No. 2:25-CV-01872-

9   RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the

10  relevant statutory provisions, when interpreted according to fundamental canons of statutory

11  construction," as well as the legislative history and decades of consistent agency practice establish

12  "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see

13  also, e.g., Barco Mercado v. Francis, --- F. Supp. 3d ---, No. 1:25-CV-6852 (LAK), WL 3295903,

14  at *12-14 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district

15  judges in about 50 different courts nationwide, finding the application of §1225(b)(2)(A) to

16  noncitizens residing in the U.S. unlawful, and 12 decisions by eight district judges adopting the

17  government's new statutory interpretation). The Seventh Circuit, the first Court of Appeals to

18  consider the government's statutory interpretation, found that it "was not likely to succeed" on the

19  merits "[b]ased upon the text and structure of [§§ 1225 and 1226]." Castanon-Nava v. U.S. Dep't

20  of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. Dec. 11, 2025).

21         Despite being told by Article III courts hundreds of times that these policies are unlawful,

22  including in a nationwide declaratory judgment, the executive branch continues to enforce and

23  defend them, necessitating class actions like this one.[8] Plaintiffs challenge these policies as

24

_____

25  [7]See Practice Alert: EOIR Issues Nationwide Guidance on *Maldonado Bautista*, AILA

26  Doc. No. 26011404 (Jan. 16, 2026), https://www.aila.org/library/practice-alert-eoir-issues-
    nationwide-guidance-on-maldonado-bautista [https://perma.cc/AN3A-7LX3].

27         [8] Similar regional class actions challenging these policies as applied by immigration courts

28  in Washington, Massachusetts, and Colorado have recently been certified. See Rodriguez Vazquez
    v. Bostock, 349 F.R.D. 333, 364–65 (W.D. Wash. 2025); Guerrero Orellana v. Moniz, --- F. Supp.

unlawful under the INA (Count I), its regulations (Count II), the Administrative Procedures Act (APA) (Count III), and the Due Process Clause of the Fifth Amendment (Count IV). Named Plaintiffs assert they "are immigrants who were living in the United States before being arrested and detained pending a decision on whether they are to be removed from the United States and are thus entitled to an individualized custody determination by DHS and, if not released, by an IJ" under 8 U.S.C. § 1226(a). Pls.' Mot. to Certify Class ("Pls.' Mot."), ECF No. 15 at 4 (citation modified). They seek to represent the following class:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. As discussed in detail below, because the Court finds (1) the jurisdiction-stripping provisions of the INA under 8 U.S.C. § 1252 do not apply, (2) Plaintiffs' state a claim under the APA, and (3) the proposed class satisfies the requirements set forth in Federal Rules of Civil Procedure 23(a) and 23(b)(2), the Court grants the instant Motion, certifies the proposed class, and appoints class counsel.

## II.    PROCEDURAL HISTORY

The Court recites the procedural history relevant to the instant Motion. On October 30, 2025, Named Plaintiffs filed their Verified Petition for a Writ of Habeas Corpus and Class Action Complaint. ECF No. 1. On October 31, 2025, this case was transferred to the undersigned Judge as related to two pending putative class actions pending before the Court. ECF No. 3. The same day, the Court held a status conference in all three putative class actions and consolidated them for limited pre-certification discovery regarding the number of individuals within the putative classes.

---

3d ---, No. 25-cv-12664-PBS, 2025 WL 3033769 (D. Mass. Oct. 30, 2025); Gutierrez v. Baltasar, No. 25-CV-2720-RMR, 2025 WL 3251143 (D. Colo. Nov. 21, 2025). And on November 26, 2025, a nationwide class was certified, and final declaratory judgment in favor of the class entered on December 18, 2025. Bautista v. Santacruz, --- F. Supp. 3d. ---, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

ECF No. 5. As of December 18, 2025, Defendants had identified 177 individuals currently detained in the District of Nevada who they contend have scheduled hearings before the Las Vegas Immigration Court and are subject to detention under 8 U.S.C. § 1225(b)(2)(A). <u>See</u> Hr'g Tr. 53:8, Dec. 18, 2025, ECF No. 61.

On November 6, 2025, Named Plaintiffs concurrently filed a Motion for Preliminary Injunction and the instant Motion for Class Certification. ECF Nos. 15, 18. After full briefing and a hearing, <u>see</u> ECF Nos. 22, 23, 26, on November 24, 2025, the Court granted Named Plaintiffs' Motion for Preliminary Injunction and ordered Defendants to (1) immediately release Plaintiff Jacobo-Ramirez on the bond conditions previously imposed by an immigration judge; (2) provide a bond hearing pursuant to 8 U.S.C. § 1226(a) to Plaintiff Guevara-Alcantar by December 1, 2025. ECF No. 35. The Court further preliminarily enjoined Defendants from continuing to deny Named Plaintiffs release on bond on the basis that they are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). <u>Id.</u> On December 3, 2025, the parties filed a joint status report, informing the Court that Plaintiff Jacobo-Ramirez was released on bond on November 24, 2025, and Plaintiff Guevara-Alcantar was granted release on bond by an IJ on December 1, 2025, but based on unexplained "privacy issues," ICE would not accept payment of bond through its online portal established for that purpose. ECF No. 41. On December 4, 2025, the Court accordingly ordered Plaintiff Guevara-Alcantar's immediate release from detention and set a deadline of January 19, 2025 for his bond payment. ECF No. 42. On December 4, 2025, Plaintiff Guevara-Alcantar was released from detention. ECF No. 44.

On November 21, 2025, Defendants filed their opposition to the instant Motion to Certify Class. ECF Nos. 32-33. On December 2, 2025, Plaintiffs filed their Reply. ECF No. 38.

On November 14, 2025, the Court set a deadline for Respondents to file an answer or motion to dismiss in response to the Class Action Complaint by November 25, 2025. ECF No. 24. After obtaining an extension of time, on December 3, 2025, Defendants filed their Response to Plaintiffs' Verified Petition for Writ of Habeas Corpus and Class Action Complaint, wherein they argue, *inter alia*, (1) 8 U.S.C. § 1225(b)(2) mandates detention of Plaintiffs who are "present in the United States without having been lawfully admitted;" (2) Plaintiffs' "temporary detention"

1    does not offend due process; (3) the Court lacks jurisdiction to entertain this action under 8 U.S.C.

2    § 1252; (4) Plaintiffs' APA Claim fails as a matter of law. ECF No. 39. On December 16, 2025,

3    Plaintiffs filed their Reply to Respondents' Response. ECF No. 55.

4        On December 18, 2025, the Court held a hearing on the (ECF No. 18) Motion for Class

5    Certification and Defendants' (ECF No. 39) Response. ECF No. 59. The Court's Order on the

6    instant Motion for Class Certification and Defendants' threshold arguments in their (ECF No. 39)

7    Response, which the Court will construe as arguments for dismissal under Federal Rule of Civil

8    Procedure 12(b)(1) and 12(b)(6), follows.

9

10   **III.    LEGAL AND FACTUAL BACKGROUND**

11       **A.  The Challenged Policies**

12       The Court makes the following factual findings regarding the government's policies

13   challenged by Plaintiffs. The Court fully incorporates by reference the legal background regarding

14   the government's detention authority and removal proceedings under the INA, the government's

15   challenged policies based on a reinterpretation of its detention authority under 8 U.S.C. §

16   1225(b)(2)(A), as well as the Court's findings regarding Defendants' practices in enforcing those

17   policies through the Las Vegas Immigration Court, as set forth in its ruling in Escobar Salgado.

18   See 2025 WL 3205356, at *2-6.

19       Plaintiffs allege that they are harmed by two distinct but "uniform agency policies" that

20   became effective through separate agency actions. Pls.' Mot., ECF No. 15 at 5. First, the Lyons

21   Memo, which states that "[e]ffective immediately it is the position of DHS that 'alien[s] present

22   in the United States who ha[ve] not been admitted'" "are subject to detention under [8 U.S.C. §

23   1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) [8 U.S.C. §

24   1182(d)(5)(A)] parole[9]" and are "ineligible for a custody redetermination hearing ('bond hearing')

25   before an immigration judge and may not be released for the duration of their proceedings absent

26   a parole by DHS." See supra, Section I, at 3 n.7. "For custody purposes, these aliens are now

27

28       [9] The discretionary parole authority referred to in the Lyons Memo derives from 8 U.S.C.
     § 1182(d)(5)(A) and is codified at 8 C.F.R. § 212.5(b) (listing criteria for parole of arriving aliens
     placed in formal removal proceedings, e.g., where detention "is not in the public interest").

treated in the same manner that 'arriving aliens' have historically been treated." Id. The Lyons Memo further instructs ICE not to issue any "Form I-286, Notice of Custody Determination" to such noncitizens, because such initial custody determinations are only required under 8 U.S.C. § 1226 and its implementing regulations. Id. The Lyons Memo thus requires ICE Enforcement and Removal Operations (ERO) to "affirmatively cancel" any custody determination for a noncitizen "still detained in ICE custody" that was "previously conducted." Id.

Plaintiffs allege that pursuant to this policy, they are considered ineligible for release on bond when apprehended by ICE and are provided no initial custody determination as required under § 1226 and its implementing regulations. Pls.' Mot., ECF No. 15 at 7. Additionally, pursuant to this policy ICE takes the position that they are ineligible for bond before the Las Vegas Immigration Court. Id.

Defendants have confirmed that the Lyons Memo constitutes the official internal policy of DHS and ICE, which became effective upon issuance on July 8, 2025, and continues to be uniformly followed within the agency. Hr'g Tr. 6:24-9:17, Dec. 18, 2025, ECF No. 61. They also confirmed that the policy encapsulated in the Lyons Memo has never been announced or published to the public. Id. They further represent that although the Lyons Memo was initially designated as "interim" and suggested that additional guidance may follow, no subsequent guidance has been issued. Id.

The second policy challenged by Plaintiffs "was adopted by the Las Vegas Immigration Court after the Board of Immigration Appeals in Matter of Hurtado formally affirmed DHS' policy in a precedential decision." Pls.' Mot., ECF No. 15 at 7. "While some IJs at the Las Vegas Immigration Court initially held bond hearings, and in some instances granted bond to people before the decision in Matter of Hurtado, IJs at the Las Vegas Immigration Court now withhold bond hearings for people in Plaintiffs' shoes." Id. (citing Declaration of Michael Kagan, Esq. ("Kagan Decl.") at ¶¶ 32-33, ECF No. 15-2). These IJs now hold that they lack jurisdiction pursuant to Hurtado to determine bond for any person who has entered the United States without inspection, even if that person has resided here for months, years, or even decades. Id. at 7-8.

**B. Named Plaintiffs**

The Court makes the following findings of fact regarding Named Plaintiffs. Named Plaintiffs Victor Kalid Jacobo-Ramirez and Edgar Michel Guevara-Alcantar are noncitizens and longtime residents of the United States who are harmed by Defendants' new immigration detention policies. Kagan Decl. ¶¶ 8, 20, ECF No. 15-2. Until this Court granted preliminary injunctive relief, both were detained at the Nevada Southern Detention Center in Pahrump, Nevada. Id. at ¶¶ 12, 24. They were arrested and detained by immigration officers while they were living in the United States, Id. at ¶¶ 8, 19, 20, 24, and are charged with, *inter alia*, being present without admission, having entered the United States without inspection. Id. at ¶¶ 13, 25, 28. Pursuant to the Lyons Memo policy, they were both denied an initial custody determination (*i.e.*, a Form I-286) because ICE was precluded from considering their release on bond. Id. at ¶¶ 18, 19, 28.

Mr. Jacobo-Ramirez was initially released on bond after an IJ determined that he posed no flight risk or danger. Id. at ¶ 16. However, after the BIA decided Hurtado, the IJ granted DHS's motion to revoke Mr. Jacobo-Ramirez's bond based on Defendants' policy of classifying him as subject to detention under 8 U.S.C. § 1225(b)(2)(A). Id. at ¶ 18. He remained in detention from October 7, 2025, until November 25, 2025 (when he was released in compliance with this Court's Order), despite having demonstrated to an IJ that he should not be detained. See id. at ¶¶ 16, 19; Dec. 3, 2025 Joint Status Report, ECF No. 41.

Mr. Guevara-Alcantar was detained in ICE custody on August 26, 2025, and could not obtain a custody redetermination hearing because of Defendants' policies. Kagan Decl. at ¶¶ 35-36, ECF No. 15-2. Until this Court ordered preliminary injunctive relief ordering Defendants to provide him a bond hearing under § 1226(a) or release him within seven days, see ECF No. 35, he remained detained without access to a bond hearing despite his lack of criminal history, length of residence in the United States, and close ties to the community in Nevada. Id. at ¶¶ 20, 24, 26. When Mr. Guevara-Alcantar was provided the Court-ordered bond hearing, the IJ found his detention was unjustified because he was neither dangerous nor a flight risk. See Dec. 3, 2025 Joint Status Report, ECF Nos. 41, 41-1.

As a result of Defendants' policies, without this Court's intervention, Named Plaintiffs faced the prospect of months, or even years, in immigration detention, separated from their families and

1    community. Kagan Decl. at ¶ 34, ECF No. 15-2.

2

3    **IV.    STANDARDS OF REVIEW**

4        **A. Motion to Dismiss**

5        Defendants' "Response" to Plaintiffs' Class Action Complaint asserts that this case should

6    be dismissed because, *inter alia*, the Court lacks jurisdiction over this action under 8 U.S.C. § 1252

7    and Plaintiffs' APA claim fails as a matter of law. The Court will construe and resolve those

8    threshold arguments as seeking dismissal for lack of subject matter jurisdiction and failure to state

9    a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

10            **1. Rule 12(b)(1)**

11        Federal courts are courts of limited jurisdiction, possessing "only that power authorized by

12    Constitution and statute." Kokkonen v. Guardian Life Insurance Company of America, 511 U.S.

13    375, 377 (1994). The burden of establishing subject matter jurisdiction rests upon the party

14    asserting jurisdiction. Id. A Rule 12(b)(1) jurisdictional attack may be facial or factual. White v.

15    Lee, 227 F.3d 1214, 1242 (9th Cir.2000) (citation omitted). In a facial attack, the challenger asserts

16    that the allegations contained in a complaint are insufficient on their face to invoke federal

17    jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). By contrast, in

18    a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

19    otherwise invoke federal jurisdiction. Id. As relevant here, "[t]he district court resolves a facial

20    attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as

21    true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

22    allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co.,

23    749 F.3d 1117, 1121 (9th Cir. 2014).

24            **2. Rule 12(b)(6)**

25        An initial pleading must contain "a short and plain statement of the claim showing that the

26    pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure

27    to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In ruling on a motion

28    to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and

- 10 -

1   are construed in the light most favorable to the non-moving party." <u>Faulkner v. ADT Sec. Services,</u>

2   <u>Inc.</u>, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

3        To survive a motion to dismiss, a complaint need not contain "detailed factual allegations,"

4   but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements

5   of a cause of action[.]" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp.</u>

6   <u>v. Twombly</u>, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains

7   "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

8   meaning that the court can reasonably infer "that the defendant is liable for the misconduct

9   alleged." <u>Id.</u> at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on

10  the pleading standard described in <u>Twombly</u> and <u>Iqbal</u>, has held that for a complaint to survive

11  dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences

12  from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S.</u>

13  <u>Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

14       **B. Class Certification**

15       The class action is "an exception to the usual rule that litigation is conducted by and on

16  behalf of the individual named parties only." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 348

17  (2011) ("<u>Dukes</u>") (quoting <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700-01 (1979)). To justify a

18  departure from that rule, "a class representative must be part of the class and 'possess the same

19  interest and suffer the same injury' as the class members." <u>Id.</u> at 348-49 (quoting <u>East Tex. Motor</u>

20  <u>Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)).

21       Rule 23 provides the procedural mechanism for federal courts to adjudicate class claims.

22  <u>Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC</u>, 31 F.4th 651, 663 (9th Cir.

23  2022) ("<u>Olean</u>"). To take advantage of that procedure, the named plaintiffs seeking to represent

24  the class must make two showings pursuant to Rule 23(a) and Rule 23(b). <u>See</u> <u>id.</u>

25       First, Rule 23(a) is designed to protect the interests of class members by ensuring "the

26  named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."

27  <u>Id.</u> at 345. Rule 23(a) requires the representative parties seeking class certification to establish "(1)

28  the class is so numerous that joinder of all members is impracticable; (2) there are questions of law

or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" Dukes, 564 U.S. at 349 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) ("Falcon").

Second, the plaintiffs must show that the class fits into one of three categories. Olean, 31 F.4th at 663. (citing Fed. R. Civ. P. 23(b)). Here, Plaintiffs seek to certify a class pursuant to Rule 23(b)(2). Rule 23(b)(2) applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." Dukes, 564 U.S. at 360 (citing Fed. R. Civ. P. 23(b)(2)).

"Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites'" of both Rule 23(a) and 23(b) have been satisfied." Olean, 31 F.4th at 664 (quoting Falcon, 457 U.S. at 161). Further, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Falcon, 457 U.S. at 160. "'Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23' . . . and must carry their burden of proof 'before class certification.'" Olean, 31 F.4th at 664 (quoting Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 275–76 (2014)) (emphasis in original). Accordingly, Plaintiffs "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." Id. at 665.

## V.    DISCUSSION

### A.  Defendants' 12(b)(1) and 12(b)(6) Arguments for Dismissal

#### 1.  Jurisdiction Stripping under 8 U.S.C. § 1252

In their Response to Plaintiffs' Class Action Complaint, and in their Opposition to the

1    instant Motion for Class Certification, Defendants' assert that this Court lacks jurisdiction to

2    entertain Plaintiffs' class action under 8 U.S.C. § 1252. See Defs' Resp. to Verified Pet. For Writ

3    of Habeas Corpus and Class Action Compl. ("Defs' Resp."), ECF No. 23. The Court construes

4    those arguments as a facial attack on jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

5        In evaluating jurisdiction under § 1252, the Court is guided "by the general rule to resolve

6    any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation, and by

7    the strong presumption in favor of judicial review." Ibarra-Perez v. United States, 154 F.4th 989,

8    995–96 (9th Cir. 2025) (quoting Arce v. United States, 899 F.3d 796, 801 (9th Cir. 2018) (per

9    curiam) (internal quotation marks omitted) (citations omitted)). Moreover, there is a "presumption

10    favoring judicial review of administrative action." Singh v. Barr, 982 F.3d 778, 781 (9th Cir. 2020)

11    (quoting Kucana v. Holder, 558 U.S. 233, 251 (2010)). "When a statute is reasonably susceptible

12    to divergent interpretation, we adopt the reading that accords with traditional understandings and

13    basic principles: that executive determinations generally are subject to judicial review.'" Id.

14    (internal quotation marks and citation omitted). "It takes 'clear and convincing evidence' to

15    dislodge this 'well-settled' presumption." Id. (quoting Kucana, 558 U.S. at 251–52). Moreover,

16    "[w]here Congress intends to preclude judicial review of constitutional claims its intent to do so

17    must be clear." Ibarra-Perez, 154 F.4th at 995-96 (citing Webster v. Doe, 486 U.S. 592, 603

18    (1988)).

19        Without this strong presumption in favor of judicial review over agency actions, "statutes

20    would in effect be blank checks drawn to the credit of some administrative officer or board." E.

21    Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 665 (9th Cir. 2021) (quoting Bowen v. Mich.

22    Acad. of Family Phys., 476 U.S. 667, 670 (1986)). "Efficient agency administration always

23    requires some authority and responsibility to resolve questions left unanswered by Congress. It

24    does not include the 'power to revise clear statutory terms.'" Id. (quoting Utility Air Reg. Grp. v.

25    E.P.A., 573 U.S. 302, 327, 134 (2014)). Courts are therefore duty bound to review "whether the

26    government has overstepped its delegated authority under the INA and encroached upon

27    Congress's legislative prerogative." E. Bay Sanctuary Covenant, 993 F.3d at 665–66 (citing 5

28    U.S.C. § 706(2)(A)).

As the Ninth Circuit recently reiterated, "[t]he presumption of reviewability is particularly strong where" as here "the claim is that agency action[s] [were] taken in excess of delegated authority." Nat'l TPS All. v. Noem, --- F.4th ---, No. 25-5724, 2026 WL 226573, at *7 (9th Cir. Jan. 28, 2026) ("NTPSA III"). "The assertion that a statute bars substantial statutory and constitutional claims is 'an extreme position.'" Id. (quoting Bowen v. Mich. Acad. of Fam. Physicians, 476 U.S. 667, 680–81(1986)).

### i.  *Section 1252's Title: "Judicial Review of Orders of Removal."*

Before proceeding to the subsections of § 1252, the jurisdiction-stripping provision of the INA, the Court notes that the Section's title strongly suggests that its subsections do not deprive this Court of jurisdiction over Plaintiffs' claims. See Dubin v. United States, 599 U.S. 110, 120-21 (2023) ("The title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute.") (quoting Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998)). "'While a title cannot "override the plain words" of a statute, it is particularly persuasive where the statute's 'key terms are so "elastic"' that they must be construed 'in light of the terms surrounding [them].'" Id. (quoting Leocal v. Ashcroft, 543 U.S. 525, 552 (2004)). Section 1252's title, "[j]udicial review of orders of removal" suggests that it does not apply here because members of the proposed class are, by definition, not subject to any order of removal, and the class claims do not challenge any order of removal, nor aspect of class members' pending removal proceedings. Rather, the class claims are a collateral challenge to the lawfulness of the government's detention policies *during the pendency of removal proceedings*, which counsels in favor of finding that the jurisdiction-stripping provisions of § 1252 cited by Defendants do not apply. See Ibarra-Perez, 154 F.4th at 996-97.

### ii.  *Section 1252(g)*

Defendants first assert that the Court lacks jurisdiction over Plaintiffs' individual and class claims under § 1252(g). See Defs.' Resp., ECF No. 39 at 22-26. Section 1252(g) provides in relevant part:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Because Plaintiffs' claims stem from their detention during removal proceedings, which arise from the Attorney General's decision to commence proceedings against them, Defendants argue that their detention is not subject judicial review.

The Supreme Court has interpreted § 1252(g) as "narrow" in scope, applying only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders. Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) ("AADC"). "Instead of 'sweep[ing] in any claim that can technically be said to arise from the three listed actions,' the provision 'refers to just those three specific actions themselves.'" Ibarra-Perez, 154 F.4th at 995 (alteration in original) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294 (2018)). AADC characterized § 1252(g) as a "discretion-protecting provision," directed against "attempts to impose judicial constraints upon prosecutorial discretion." 525 U.S. at 485 n.9. As such, the government's insistence that "§ 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limit'" has repeatedly been rejected as "implausible." See, e.g., Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 14 (2020) (quoting AADC, 525 U.S. at 482). And as the Ninth Circuit recently affirmed in Ibarra-Perez, courts retain "jurisdiction to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'" Ibarra-Perez 154 F.4th at 996 (quoting United States v. Hovsepian, 359 F.3d 1144, 1155 (9th Cir. 2004)). Moreover, in cases where a noncitizen challenges the Attorney General's arguably discretionary decision on a purely legal basis as a "violation [of] the Constitution" or "INA," courts have jurisdiction to review such decisions as "premised on a lack of legal authority." Id. at 998.

Defendants' argument that detention during the pendency of removal proceedings is unreviewable as an extension of DHS's decision to "commence removal proceedings" has been explicitly rejected by the Supreme Court as "uncritical literalism leading to results that no sensible person could have intended." Jennings, 583 U.S. at 293-94 (citation modified). Because "[t]he government's broad reading of § 1252(g) would lead to a result that is not contemplated in the statute and that has been disavowed by the Supreme Court," the Court concludes the class claims

1    here do not concern discretionary actions barred from review by § 1252(g). <u>Ibarra-Perez</u>, 154 F.4th

2    at 997.

3              iii.  ***Section 1252(b)(9)***

4         Defendants next argue that the Court is stripped of jurisdiction over Plaintiffs' claims

5    pursuant to § 1252(b)(9). <u>See</u> Defs.' Resp., ECF No. 39 at 22-26. That section provides:

6              Judicial review of all questions of law and fact, including
              interpretation and application of constitutional and statutory
7              provisions, arising from any action taken or proceeding brought to
              remove an alien from the United States under this subchapter
8              [including §§ 1225 and 1226] shall be available only in judicial
              review of a final order under this section.
9

10    8 U.S.C. § 1252(b)(9).

11         Defendants' argument that § 1252(b)(9) prohibits judicial review of the lawfulness of

12    Plaintiffs' detention pending the conclusion of removal proceedings is similarly foreclosed by

13    Supreme Court precedent. Because Plaintiffs "are not asking for review of an order of removal;

14    they are not challenging the decision to detain them in the first place or to seek removal as opposed

15    to the decision to deny them bond hearings; and they are not even challenging any part of the

16    process by which their removability will be determined . . . § 1252(b)(9) does not present a

17    jurisdictional bar." <u>Nielsen v. Preap</u>, 586 U.S. 392, 402 (2019) (quoting <u>Jennings</u>, 585 U.S. at 294-

18    95) (alterations in original). In <u>Jennings</u>, the Supreme Court specifically rejected the government's

19    broad reading of "arising from" under § 1252(b)(9)—which Defendants continue to assert here—

20    as "extreme," because by only allowing challenges to detention authority through an appeal of a

21    final order of removal (*i.e.*, after the period of detention under § 1225(b)(2) or §§ 1226(a) and (c)

22    has ended), that reading would "make claims of prolonged detention effectively unreviewable."

23    <u>Id.</u> at 293 ("By the time a final order of removal was eventually entered, the allegedly excessive

24    detention would have already taken place. And of course, it is possible that no such order would

25    ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial

26    review.") Moreover, a reading of § 1252 that would "completely immunize[ ] [DHS's] practices

27    and procedures [regarding detention] from due process challenges" cannot be sustained. <u>Walters</u>

28    <u>v. Reno</u>, 145 F.3d 1032, 1052 (9th Cir. 1998). As such, because Plaintiffs' claims regarding the

1   lawfulness of Defendants' detention policies are "independent of or collateral to the removal

2   process" § 1252(b)(9) does not bar them. Ibarra-Perez, 154 F.4th at 996-97.

3          **iv.  *Section 1252(e)(1)(B)***

4          In their Opposition to Plaintiffs' Motion to Certify Class, Defendants also argue §

5   1252(e)(1)(B) deprives this Court of subject matter jurisdiction to certify the proposed class and

6   consider the class claims. Defs.' Opp'n. to Motion to Certify Class ("Defs.' Opp'n."), ECF No. 32

7   at 7-9. Subsection § 1252(e) is entitled "Judicial review of orders *under section 1225(b)(1)*." 8

8   U.S.C. § 1252(e) (emphasis added). Section § 1252(e)(1), entitled "Limitations on relief" provides:

9          Without regard to the nature of the action or claim and without
            regard to the identity of the party or parties bringing the action, no
10         court may—

11                 (A) enter declaratory, injunctive, or other equitable relief in
            any action pertaining to an order to exclude an alien in accordance
12         with section 1225(b)(1) of this title except as specifically authorized
            in a subsequent paragraph of this subsection, or

13                 (B) certify a class under Rule 23 of the Federal Rules of Civil
14         Procedure in any action for which judicial review is authorized
            under a subsequent paragraph of this subsection.

15

16   8 U.S.C. § 1252(e)(1). The relevant provision here, § 1252(e)(3), is entitled "Challenges on

17   validity of the system" and provides:

18         (A) In general

19                 Judicial review of determinations under section 1225(b) of
            this title and its implementation is available in an action instituted in
20         the United States District Court for the District of Columbia, but
            shall be limited to determinations of--

21
                   (i) whether such section, or any regulation issued to
22         implement such section, is constitutional; or

23                 (ii) whether such a regulation, *or a written policy directive,
            written policy guideline*, or written procedure issued by or under the
24         authority of the Attorney General to implement such section, is not
            consistent with applicable provisions of this subchapter or is
25         otherwise in violation of law.

26   Id., § 1252(e)(3)(A)(i)-(ii). A complaint under this provision "must be filed no later than 60 days

27   after the date the challenged section, regulation, directive, guideline or procedure described in

28   clause (i) or (ii) of subparagraph (A) is first implemented." Id., § 1252(e)(3)(B). Further "[i]t shall

1    be the duty of the District Court, the Court of Appeals, and the Supreme Court of the United States

2    to advance on the docket and to expedite to the greatest possible extent the disposition of any case

3    considered under this subparagraph." Id., § 1252(e)(3)(D).

4         Defendants contend that Plaintiffs' claims constitute a challenge "on validity of the

5    system" under § 1252(e)(3) because they challenge Defendants' detention policies, which they

6    claim flow from a "written policy directive" or "written policy guideline" "to implement" §

7    1225(b) under the authority of the Attorney General. See Defs.' Opp'n, ECF No. 32 at 7-9 (citing

8    8 U.S.C. § 1252(e)(3)(a)(i)). Thus, they argue the U.S. District Court for the District of Columbia

9    has exclusive jurisdiction over Plaintiffs' claims, which cannot be brought in a class action under

10   Federal Rule of Civil Procedure 23, and consequently, Plaintiffs should have filed a complaint on

11   behalf of themselves individually in the D.C. District 60 days after the Lyons Memo was "first

12   implemented," which would have been September 6, 2025.

13        As discussed below, the Court finds § 1252(e)(1)(B) does not strip this Court of jurisdiction

14   over Plaintiffs' class claims for several reasons: Defendants' interpretation (1) incorrectly

15   presumes the first order question of whether § 1225(b) applies to class members at all (it does not);

16   (2) fails to acknowledge that Plaintiffs raise an *as applied* challenge to the government's policies

17   as exceeding statutory authority, not a *facial*, *i.e.*, "systemic" challenges to policies *implementing*

18   § 1225(b) as contemplated by § 1252(e)(3); (3) contravenes the plain text of the statute and its

19   structure and purpose as interpreted by the Ninth Circuit; and (4) violates the canon against

20   absurdity.

21        First, § 1252(e)(1)(B) and § 1252(e)(3) do not apply, because § 1225(b) does not apply to

22   Plaintiffs in the first place, as this Court held in granting Named Plaintiffs' a preliminary

23   injunction, wherein the Court rejected Defendants' statutory interpretation. See ECF No. 35 at 11-

24   13. In other words, if the answer to the threshold statutory question of whether § 1225(b)(2)(A)

25   applies to Plaintiffs is no, then § 1252(e) cannot apply. Aguilar v. English, No. 2:25-cv-898, 2025

26   WL 3280219, at *3 (N.D. Ind. Nov. 25, 2025) ("This threshold classification does not come within

27   the scope of § 1252(e)(3)'s limitation, for this judicial question [*i.e.*, which detention provision

28   applies] isn't a 'determination under section 1225(b) and its implementation.' It is a determination

1    whether an alien, so defined in the INA, even falls within that section.").  Because § 1225(b) does

2    not govern Plaintiffs' detention, Plaintiffs are not challenging the "implementation" of § 1225(b).

3    See, e.g, Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 3033769, at *6 (D. Mass.

4    Oct. 30, 2025) ("Because § 1225(b)(2)(A) does not govern the detention of individuals in [the

5    named plaintiff's] position in the first place, he is not seeking judicial review of the

6    'implementation' of § 1225(b)"); see also Castañon-Nava, No. 25-3050, 2025 WL 3552514, at

7    *10 n.13 (holding that the federal government defendants "cannot insulate themselves from

8    judicial review" under § 1252 "simply by pointing to § 1225(b)(2)(A) and claiming that it applies

9    without any factual support.").

10        Second, Plaintiffs' class claims are not a "challenge on the validity of the system" under §

11    1225(b)—Plaintiffs raise an as-applied challenge to Defendants' policies of detaining them under

12    § 1225(b)(2)(A), not a facial challenge to the statutory scheme. They are not challenging the

13    validity of the statutory scheme itself, nor disputing that § 1225(b)(2) requires detention of

14    noncitizens properly detained under that subsection. Instead, they assert that the government lacks

15    the statutory authority to detain them under § 1225(b)(2) because that statute does not apply to

16    their circumstances. See, e.g., Pablo Coranado v. Dep't. of Homeland Sec., No. 1:25-CV-831,

17    2025 WL 3628229 (S.D. Ohio Dec. 15, 2025); J.A.M. v. Streeval, No. 4:25-cv-342, 2025 WL

18    3050094, at *1 (M.D. Ga. Nov. 1, 2025);  Ardon-Quiroz v. Assistant Field Director, No. 25-CV-

19    25290, 2025 WL 3451645, at *3 (S.D. Fla. Dec. 1, 2025) (collecting cases for proposition that §

20    1252(e)(3) does not deprive federal courts of jurisdiction in such situations); Cortez v. Lynch, No.

21    1:25-CV-822, 2026 WL 82039, at *4 (S.D. Ohio Jan. 12, 2026) (same).

22        In addition, Plaintiffs challenge the Lyons Memo and Hurtado *as exceeding the Attorney

23    General's statutory authority* under § 1225(b), not written policies *implementing* § 1225(b)

24    pursuant to discretionary authority delegated by Congress. Congress did not expressly delegate

25    authority to the Attorney General to "implement" the detention scheme under § 1225(b)(2)(A) by

26    prescribing regulations to enact that Section; rather, § 1225(b)(2) provides only that "the Attorney

27    General may return [an] alien" to the contiguous foreign territory from which a noncitizen entered

28    pending their removal proceedings. 8 U.S.C. § 1225(b)(2)(C). That § 1253(e)(3)(A)(ii) authorizes

challenges to policies, regulations, and other written directives "issued by or under the authority of the Attorney General to *implement* [§ 1225(b)]" (emphasis added) suggests the statute is referring to the implementation of *expedited removal* under § 1225(b)(1) because that section, unlike § 1225(b)(2)(A), expressly grants implementing authority to the Attorney General. See, e.g., 8 U.S.C. § 1225(b)(1)(A)(iii) (authorizing the Attorney General to designate categories of noncitizens subject to expedited removal "in [her] sole and unreviewable discretion"); id., § 1225(b)(1)(B)(i) (authorizing the Attorney General to designate the location of asylum interviews for noncitizens subject to expedited removal); id., § 1225(b)(1)(B)(iii)(III) ("The Attorney General shall provide by regulation . . . for prompt review by an immigration judge of a determination . . . that the alien does not have a credible fear of persecution.; id., § 1225(b)(1)(C) (authorizing the Attorney General to "provide for by regulation for prompt review" of expedited removal orders for certain noncitizens "who claim[ ] under oath . . . to have been lawfully admitted" or "granted asylum").

Thus, the plain text of § 1252(e)(3), when read in conjunction with § 1225(b), limits judicial review of the Attorney General's express authority to "implement" the expedited removal scheme under § 1225(b)(1). See Garro Pinchi v. Noem, No. 25-CV-056232-PCP, 2025 WL 3691938, at *10 (N.D. Cal. Dec. 19, 2025). Further, the Court retains jurisdiction to decide the "purely legal" questions posed by Plaintiffs' class claims, where the policies challenged do not constitute discretionary decisions to "implement" § 1225(b) pursuant to any expressly delegated authority, but rather constitute a "purely legal" reinterpretation of the statutory text in contravention of agency practice and existing regulations. Cf. Ibarra-Perez 154 F.4th at 996 (providing that courts retain authority under § 1252 to decide a "purely legal question" that "does not challenge the Attorney General's discretionary authority."); see also Loper Bright Enters. v. Raimondo, 603 U.S. 269, 400 (2024) (observing that while "agencies have no special competence in resolving statutory ambiguities," "[c]ourts do").

Third, Respondents' interpretation of § 1252(e)(1)(B) and § 1252(e)(3) contravenes the Section's title, structure, and purpose. See Bailey v. Hill, 599 F.3d 976, 980 (9th Cir. 2010) (holding that a statute's "structure and purpose" may provide interpretive guidance). The Section's

title, structure, and purpose suggests that these sections are directed at orders, determinations, procedures, policies, and regulations related to *expedited removal* under § 1225(b)(1), not challenges to *detention* under § 1225(b)(2). The reference to "orders" in the subsection title, entitled "Judicial review of orders under section 1225(b)(1)," especially when read in the context of § 1252's title "Judicial review of orders of removal," suggests this subsection concerns *expedited removal orders* under § 1225(b)(1), as further discussed below. See Dubin, 599 U.S. at 121 ("a title is especially valuable where it reinforces what the text's nouns and verbs independently suggest."). Similarly, § 1252(e)(3)(D)'s requirement that courts "expedite to the greatest possible extent the disposition of any case considered under this paragraph" makes sense if § 1252(e)(3) concerns only *expedited* removal under § 1225(b)(1), but not if it concerns detention under § 1225(b)(2) pending *standard* removal proceedings under § 1229a, which can take months or years. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020) (explaining that Congress created the expedited-removal process due to the backlog and administrative and fiscal costs of standard removal proceedings, which take on average over one year to resolve).

The Ninth Circuit has interpreted § 1252(e) as operating in conjunction with § 1252(a). See E. Bay Sanctuary Covenant, 993 F.3d at 666. Subsections 1252(a)(2) and (a)(5) deprive courts of jurisdiction to review claims "relating to section 1225(b)(1)" "except as provided in subsection (e)." 8 U.S.C. §§ 1252(a)(2)(A)(i)-(iv). Section 1252(a)(5) "limit[s] review of expedited-removal orders to habeas review under 1252(e) and further restricts any appellate habeas review to considering only whether the migrant is lawfully in the country." E. Bay Sanctuary Covenant, 993 F.3d at 666. "Section 1252(e)(3) authorizes a limited court review of *expedited-removal proceedings* . . . in short, [it] limits jurisdiction over challenges to *regulations implementing expedited-removal orders*." Id. (emphasis added) (citing United States v. Barajas-Alvarado, 655 F.3d 1077, 1086 n. 10 (9th Cir. 2011) ("[Section] 1252(e)(3) limits jurisdiction over general challenges to expedited removal proceedings.")).

In addressing an APA challenge to a rule adopted by DOJ and DHS, brought by legal service organizations on behalf of their members, where the government asserted the rule was a written policy under § 1252(e)(3), the Ninth Circuit specifically held "in the APA context, these

provisions prohibit 'a claim by an alien, however it is framed, [that] challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal[.]'" Id. at 666-67 (citing Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012)). The Ninth Circuit reiterated that the purpose of §1252(e)(3), like other provisions under § 1252, is to "limit all aliens to one bite of the apple with regard to challenging an order of removal," *i.e.*, to channel such claims through a petition for review of an order of removal before the BIA and Court of Appeals. Id. (quoting Martinez, 704 F.3d at 622). Accordingly, the Ninth Circuit found § 1252(e)(3) does not apply to challenges to government policies that "may eventually be relevant to removal proceedings" but do not "implement removal orders" or are not "otherwise entirely linked with removal orders" even where an APA challenge is lodged against a policy, rule, or regulation that is "collateral to the process of removal." Id. (alterations in original) (quoting § 1252(e)(3)). That reading "is consistent with the purposes of these jurisdictional limitations: allowing collateral APA challenges" to such policies "does not undermine Congress's desire to 'limit all aliens to one bite of the apple with regard to challenging' their removal orders." Id. (citing Martinez, 704 F.3d at 622).

To summarize, because Plaintiffs' challenge Defendants' policies and practice of applying § 1225(b)(2)(A) to mandate their detention, rather than any "regulation, or a written policy directive, written policy guideline, or written procedure" implementing expedited removal proceedings, removal procedures, or removal orders under § 1225(b), § 1252(e)(3) does not apply to deprive this Court of jurisdiction over Plaintiffs' class claims. See also, *e.g.*, Singh v. Barr, 982 F.3d 778, 784 (9th Cir. 2020) (holding that § 1252(e) read together with other provisions under § 1252 provided "clear and convincing evidence that Congress intended to deprive [courts] of jurisdiction to review *expedited removal orders* and *related matters affecting those orders*, including underlying negative credible fear determinations and rulings on the regulations *implementing the expedited removal statute*.") (emphasis added).

Fourth, the Court finds that the government's interpretation of § 1252(e)(3) as applying to Plaintiffs' challenge to the government's new detention policies must be rejected as producing absurd results. See NTPSA III, 2026 WL 226573, at *8 (9th Cir. Jan. 28, 2026) ("the canon against

1    absurdity provides that statutory interpretations which would produce absurd results are to be
2    avoided") (citation modified) (quoting United States v. LKAV, 712 F.3d 436, 440 (9th Cir. 2013)).
3    To find that the Lyons Memo constitutes a "written policy directive" or "written policy guideline,"
4    as identified in § 1252(e)(3), would produce absurd results, because, as Defendants concede,
5    notwithstanding the fact that the internal agency policy was officially announced and uniformly
6    adopted on July 8, 2025, DHS failed to publish the policy in the Federal Register, despite being
7    required by law to do so. See 5 U.S.C. § 552(a)(1)(D) (requiring administrative agencies to
8    "separately state and currently publish in the Federal Register for the guidance of the public"
9    "statements of general policy or interpretations of general applicability formulated and adopted by
10   the agency.").

11        The Lyons Memo came to light because it was reported by the Washington Post days after
12   it became effective. See supra, Section I, at 3 n.6. To date, the only documentation of the policy is
13   a photo of a computer screen displaying the Lyons Memo, which was leaked to the public, see id.,
14   at 3 n.7, and Defendants admit they have never provided official notice of the policy "for the
15   guidance of the public" as required by 5 U.S.C. § 552(a)(1)(D). See supra, Section III.A. Nor have
16   Defendants produced an official and authenticated copy of the Lyons Memo, whether in this
17   litigation or, to the Court's knowledge, in litigation challenging the policy across the country. Id.
18   The Court finds that Defendants cannot invoke the strict jurisdictional and temporal limitations
19   under § 1252(e)(3) to shield the Lyons Memo from review while unlawfully failing to provide
20   public notice of the policy. The plain text of § 1252(e)(3) clearly assumes a "written policy
21   directive" or "written policy guideline" would be published to the public prior to or at a minimum,
22   upon its effective date, as required by law, so that individuals adversely affected would have a
23   sufficient opportunity to lodge a "systemic" challenge within the strict 60-day time limit. To find
24   otherwise would allow DHS and ICE to place potentially insurmountable constraints on judicial
25   review of its internal policies, and Defendants' fall far short of providing "clear and convincing
26   evidence" to overcome the presumption of the availability of judicial review of the Lyons Memo.
27   Singh, 982 F.3d at 781. Section 1252(e)(3) "simply cannot bear the weight of the Government's
28   expansive interpretation" to apply its strict timing and venue limitations to a written policy that

1    the relevant agencies unlawfully failed to produce to the public upon its effective date. <u>NTPSA III</u>,

2    2026 WL 226573 at *9.

3         Accordingly, the Court finds that § 1252(e)(1)(B) neither bars certification of Plaintiffs'

4    proposed class nor deprives this Court of jurisdiction to review their challenge to Defendants'

5    policies of unlawfully applying § 1225(b)(2)(A) to class members.

6         **2.  Plaintiffs Challenge to the Lyons Memo and <u>Hurtado</u> Under § 706(2) of the**

7         **APA**

8         In their Response to the Class Action Complaint, Defendants' lodge various challenges to

9    Plaintiffs' Count III Administrative Procedure Act Claim (APA), under 5 U.S.C. § 706, which the

10   Court, at this stage, will construe as arguing that Plaintiffs fail to state a claim under § 706 per the

11   standard of Federal Rule of Civil Procedure 12(b)(6). <u>See</u> Defs.' Resp., ECF No. 39 at 27-30.

12        The APA provides that "[a]gency action made reviewable by statute and final agency

13   action for which there is no other adequate remedy in a court are subject to judicial review." 5

14   U.S.C. § 704. The APA defines "agency action" to "includ[e] the whole or a part of an agency

15   rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C.

16   § 551(13); <u>see also</u> <u>id.</u>, § 701(b)(2). "This definition 'is meant to cover comprehensively every

17   manner in which an agency may exercise its power.'" <u>San Francisco Herring Assn. v. Dept. of the</u>

18   <u>Int.</u>, 946 F.3d 564, 576 (9th Cir. 2019) (quoting <u>Whitman v. American Trucking Ass'ns</u>, 531 U.S.

19   457, 478 (2001)). As relevant here, the term "rule" encompasses "the whole or a part of an agency

20   statement of general or particular applicability and future effect designed to implement, interpret,

21   or prescribe law or policy or describing the organization, procedure, or practice requirements of

22   an agency." 5 U.S.C. § 551(4); 5 U.S.C. § 701(b)(2).

23        Agency action is reviewable as "final agency action" under the APA if the agency's "action

24   amounts to a definitive statement of the agency's position or has a direct and immediate effect on

25   the day-to-day operations of the subject party, or if immediate compliance with the terms is

26   expected." <u>Ctr. for Biological Diversity v. Haaland</u>, 58 F.4th 412, 417 (9th Cir. 2023) (citation

27   omitted). "This requires focus on the practical and legal effects of the agency action, not on labels,

28   and finality is interpreted in a pragmatic and flexible manner." <u>Id.</u> (citation and quotation marks

1  omitted); <u>see also</u> <u>Am. Fed'n of Gov't Emps. v. Trump</u>, 139 F.4th 1020, 1038 (9th Cir. 2025)

2  ("The finality of an agency action is 'interpreted in a pragmatic and flexible manner.'").

3      Under § 706(2) of the APA, a federal court "shall hold unlawful and set aside agency

4  action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion,

5  or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or

6  immunity; (C) in excess of statutory jurisdiction, authority, or short of statutory right; (D) without

7  observance of procedure required by law; [etc.]." 5 U.S.C. § 706(2).

8      The Court finds the Lyons Memo, which Defendants have confirmed is a uniform policy

9  that was effective immediately upon issuance, <u>see supra</u>, Section III.C, is a final agency action by

10  ICE in conjunction with DHS and DOJ, reviewable under the APA. <u>See</u>, <u>e.g.</u>, <u>Garro Pinchi v.</u>

11  <u>Noem</u>, No. 25-CV-05632-PCP, 2025 WL 3691938, at *20 (N.D. Cal. Dec. 19, 2025) ("Acting

12  Director Lyons's internal memorandum conclusively establishes that DHS had a written policy as

13  to the meaning of § 1225(b)(2) as of July 2025."). Defendants do not contest this. Likewise, the

14  Court finds, and Defendants do not contest, that the BIA's precedential decision in <u>Hurtado</u> is a

15  final agency action reviewable under the APA. <u>Judulang v. Holder</u>, 565 U.S. 42, 52–53 (2011)

16  (holding a BIA policy encapsulated in precedential decisions was "arbitrary [or] capricious" under

17  the APA, 5 U.S.C. § 706(2)(A)). Defendants assert only two attacks on Plaintiffs' Count III APA

18  claim: (1) the challenged policies are excluded from judicial review under the APA because they

19  concern matters committed to agency discretion, and (2) even assuming they are subject to review,

20  the challenged policies are not arbitrary or capricious.

21          **i. *Judicial Review under the APA***

22      Defendants assert that that the Lyons Memo and <u>Hurtado</u> policies are exempt from judicial

23  review under the APA as "matters committed to agency discretion by law." <u>See</u> 8 U.S.C. §

24  701(a)(2). "[T]he APA's basic presumption of judicial review can only be overcome if there is

25  clear and convincing evidence that Congress intended to preclude judicial review." <u>Washington v.</u>

26  <u>United States Dep't of State</u>, 996 F.3d 552, 560 (9th Cir. 2021). So "where substantial doubt about

27  the congressional intent exists, th[at] general presumption . . . is controlling." <u>Block v. Community</u>

28  <u>Nutrition Institute</u>, 467 U.S. 340, 351 (1984). Accordingly, "[s]ection 701(a)(2)'s exception for

action committed to agency discretion is read 'quite narrowly.'" Johnson Tr. of Charley E. Johnson Revocable Living Tr. v. United States, 145 F.4th 1158, 1163 (9th Cir. 2025) (quoting Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 586 U.S. 9, 23 (2018)). "[A]gency action is 'committed to agency discretion' only in 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" Id. (quoting Dep't of Com. v. New York, 588 U.S. 752, 772 (2019)). In other words, "judicial review is unavailable when there is 'no law to apply.'" Id. (quoting Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971)). The Supreme Court "generally limit[s] the exception to certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion." Dep't of Com., 588 U.S. at 772 (citation modified).

This is not the "rare circumstance[ ]" where "there is no law to apply." Johnson, 145 F.4th at 1163 (citation modified). Again, while agencies have "authority and responsibility to resolve questions left unanswered by Congress," their discretionary authority does not "include the 'power to revise clear statutory terms.'" E. Bay Sanctuary Covenant, 993 F.3d at 665 (quoting Utility Air Reg. Grp., 573 U.S. at 327). Even if Defendants' abrupt departure from decades of consistent agency practice "could conceivably fall within [DHS and the DOJ/BIA's] broad discretion" under the INA, "judicial review under the APA concerns not only the particular outcome the agency reaches, but also the process in which the agency engages and the reasoning the agency articulates when it reaches that outcome." Jajati v. United States Customs & Border Prot., 102 F.4th 1011, 1017 (9th Cir. 2024). In addition to the statutory text, DHS and the BIA's prior practice, existing regulations, and prior precedent provides a benchmark against which to measure "whether the agency justified its choice on specious grounds, failed to satisfy the general requirements of reasoned agency decision making, or failed to comply with its own regulations." Id. (citation modified). In other words, there is abundant "law to apply" to determine, inter alia: (1) whether Plaintiffs are subject to § 1225(b)(2)(A) or § 1226(a), (2) whether Plaintiffs detention under § 1225(b)(2)(A) violates their due process rights, and (3) whether DHS and the BIA's new policies are arbitrary or capricious. See Physicians for Soc. Resp. v. Wheeler, 956 F.3d 634, 643 (D.C. Cir. 2020) ("judicially manageable standards" to review agency action "may be found" in a wide range

of sources: "formal and informal policy statements and regulations as well as in statutes."). Moreover, Defendants point to the Lyons Memo and Hurtado, both of which this Court can evaluate to determine the lawfulness of the challenged policies and examine Defendants' justifications for its abrupt change in position after decades of affording bond hearings to Plaintiffs. See Robbins v. Reagan, 780 F.2d 37, 45 (D.C. Cir. 1985) ("[T]he agency itself can often provide a basis for judicial review through the promulgation of regulations or announcement of policies.").

Further, Defendants have not established that "courts traditionally have regarded" immigration enforcement decisions "as committed to agency discretion" to such a degree that they are beyond judicial review under the APA. Dept. of Com., 588 U.S. at 772. To the contrary, the Ninth Circuit "ha[s] held that there are meaningful standards of review and have declined to apply § 701(a)(2)" in "several immigration cases." Perez Perez v. Wolf, 943 F.3d 853, 861 (9th Cir. 2019) (collecting cases and holding that denial of U-Visa petitions is subject to judicial review). As a result, § 701(a)(2)'s exception for action committed to agency discretion does not bar judicial review here.

### ii. *Arbitrary and Capricious Review*

Defendants also claim the Lyons Memo is not "arbitrary" or "capricious" under § 706(2)(A) of the APA because the Memo itself provided a sufficiently reasoned explanation for its change in legal position, based on a correct statutory interpretation, and to the extent it was insufficient in its reasoning, the BIA's decision in Hurtado satisfied the requirement by providing further reasoning. See Defs' Resp., ECF No. 39 at 28-29. For purposes of the § 706(2)(A) "arbitrary" and "capricious" standard, a reviewing court should set aside an agency's action "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." All. for the Wild Rockies v. Petrick, 68 F.4th 475, 492 (9th Cir. 2023) (quoting Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). The "touchstone" of this analysis is "reasoned decisionmaking." Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue, 926 F.3d 1061, 1080 (9th Cir. 2019)

(citation omitted).

Defendants' arguments asserting that their challenged policies are the product of reasoned decision making are arguments going to the merits of Plaintiffs' arbitrary and capricious claim, which need not be resolved at this stage, especially without the parties having had the opportunity to conduct discovery and produce an administrative record.

More importantly, Plaintiffs additionally argue that Defendants' policies must be set aside because they violate the law. See ECF No. 1 at 21. Section 706 of the APA also requires this Court to vacate agency action that is contrary to law. See 5 U.S.C. § 706(2)(A)-(B); see also E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 669 (9th Cir. 2021) (quoting 5 U.S.C. § 706(2)(A)) ("The APA requires that we 'hold unlawful and set aside agency action . . . found to be . . . not in accordance with law.'"); Sierra Club v. Trump, 929 F.23d 670, 698 (9th Cir. 2019) (quoting 5 U.S.C. § 706(2)(B)) ("The APA mandates that a court 'shall . . . hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right . . . .'"). To the extent Defendants will solely rely on the legal reasoning encapsulated in the Lyons Memo and Hurtado as sufficient to overcome § 706, the Court has already addressed Defendants' statutory interpretation at length and rejected it in this and other cases as contrary to law. See ECF No. 35 at 11-13 (finding Plaintiffs are likely to succeed in establishing Defendants' new interpretation of § 1225(b)(2)(A) is wrong, and that they and others similarly situated were properly detained under § 1226(a)) (citing Escobar Salgado, 2025 WL 3205356 at *20-22 (examining Defendants' sudden departure from decades of agency practice, without acknowledging or considering the effects of that departure, and finding the BIA's decision in Hurtado should be afforded little to no persuasive weight)); see also, e.g., Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 30-33 (2020) (recission of DACA program was arbitrary and capricious for failing to consider important aspects of the problem, like serious reliance interests, and weighing such interests against competing policy concerns); Judulang, 565 U.S. at 52-53 (BIA policy regarding discretionary relief "flunked" the test for reasoned decisionmaking by relying on arbitrary and irrelevant factor).

In sum, the Court finds (1) Defendants' policies are not immune from judicial review, and (2) Plaintiffs state a claim under § 706 of the APA.

### B.  Class Certification Under Rule 23

Having addressed Defendants' threshold dismissal arguments, the Court turns to the requirements for certification under Federal Rule of Civil Procedure 23. Named Plaintiffs seek certification of the following proposed class:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

For the following reasons, the Court finds the proposed class satisfies the requirements of Rules 23(a) and Rule 23(b)(2).

#### 1.  Rule 23(a)

#### i.  *Numerosity*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Harris v. Palm Springs Alpine Ests., Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). Rule 23(a) requires examination of the specific facts of each case and imposes no absolute limitations. Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980). Courts generally find "the numerosity requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 308 F. App'x 646, 651 (9th Cir. 2010).

Defendants do not dispute that the proposed class satisfies numerosity—rather they admit that, as of December 12, 2025, there were *at least* 177 noncitizens in the proposed class and that class membership is constantly in flux as current members are removed from Nevada or the country and ongoing arrests lead to future additional class members. See Hr'g. Tr. 46:19-24, Dec. 18, 2025, ECF No. 61 (Counsel for Defendants noting "[the detainee] list [of individuals DHS considers detained under § 1225(b)(2)(A) in the District of Nevada] changes by week or sometimes even by day. If some people are removed, they no longer will be appearing on the list . . . . If I look

- 29 -

at a list today, the list may be different and probably will be different . . . ").  Defendants are uniquely and solely aware of the exact number of members in the proposed class at any given time, so they are "uniquely position to ascertain class membership." Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999). Moreover, this Court has already granted relief to well over 40 individual petitioners and counting who were detained without the opportunity for release on bond pursuant to Defendants' challenged policies. See supra, Section I at 1 n.1. Further, the changing nature of class membership evidences the impracticability of joinder. See A.B. v. Haw. St. Dep't of Educ., 30 F.4th 828, 838 (9th Cir. 2022) (When "a class's membership changes continually over time, that factor weighs in favor of concluding that joinder of all members is impracticable.").

Impracticability of joinder is also demonstrated by the fact that the proposed class members are detained and therefore unable to work to support themselves or their families. They consequently have limited resources and face numerous barriers to accessing counsel, which makes it difficult for any class member to challenge Defendants' policies through individual suits in federal court; therefore, "considerations of due process, judicial economy, and the ability of claimants to institute" individual claims also establish that the "impracticability-of-joinder rule" is satisfied. William B. Rubenstein, 1 Newberg & Rubenstein on Class Actions § 3:11(6th ed. 2022) (footnote omitted). In sum, the "numerosity" of the class and the "impracticability of joinder" under Rule 23(a)(1) is clearly established.

### ii. *Commonality*

Rule 23(a)(2) requires that the proposed class presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality rule is construed permissively." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by Dukes, 564 U.S. at 338. It requires courts "to look only for some shared legal issue or a common core of facts." Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010).  Commonality exists if class members' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 at 350. The critical issue is "not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding

to generate common answers apt to drive the resolution of the litigation." Id. (citation omitted).

All members of the proposed classes suffer a common injury caused by the Defendants' new policies: as persons who entered the United States without inspection and who are or were not apprehended upon arrival, they are now deemed subject to the mandatory provision under § 1225(b)(2)(A) and not considered for release on bond. This injury raises a common core legal question: whether Defendants' uniform policies and practice of applying § 1225(b)(2)(A) to the class to deny their consideration for release on bond is lawful under the INA, its implementing regulations, the APA, and the Due Process Clause of the Fifth Amendment. The class-wide resolution of this common question would remedy the class-wide harms through, at minimum, setting aside, i.e., vacatur, under § 706(2) of the APA both the Lyons' memo and Hurtado, and a declaratory judgment that class members are detained under § 1226(a) and its implementing regulations, not subject to mandatory detention under § 1225(b)(2)(A), and are thus entitled to initial custody determinations by ICE and a custody redetermination hearing before the Las Vegas Immigration Court.

Defendants assert that the proposed class lacks commonality because it is overbroad. Defs' Opp'n, ECF No. 32 at 9. First, they assert that there is no "clear line" demarcating when and where a putative class member becomes a class member, because a noncitizen can be encountered within the interior but whether they have "effected an entry" for purposes of immigration law would depend on the particular facts of the case. Id. at 11 (citing Thuraissigiam, 591 U.S. at 139-40) (finding a noncitizen arrested 25 yards from the border shortly after an attempted unlawful entry cannot be said to have "effected an entry" for purposes of immigration law). However, because the class is limited to noncitizens whose "most recent arrest by ICE occurred inside the United States and not while arriving in the United States," current regulations and BIA precedent prior to Hurtado clearly demarcates class membership. See 8 U.S.C. § 1.2 (defining the term "arriving alien" under the INA); Matter of Q. Li, 29 I. & N. Dec. 66, 67 (BIA 2025) (finding an individual who was apprehended shortly after crossing the border and released on humanitarian parole, and not subject to expedited removal, was detained under § 1225(b)(2)(A)).

Moreover, the "entry doctrine," i.e., the "distinction between an alien who has effected an

entry into the United States and one has never entered," which "runs throughout immigration law," provides the standard to determine whether someone's most recent arrest by ICE occurred while they were "arriving" in the U.S. or after they had "effected an entry" and thereby determines class membership. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (collecting cases); compare Shaughnessy v. U.S. ex rel. Mezei, 345 U.S. 206, 212-13 (1953) (an individual detained at Ellis Island indefinitely had not entered the U.S. through "harborage at Ellis Island," and so Mr. Mezei was "an alien on the threshold of initial entry"), with Yamataya v. Fisher, 189 U.S. 86, 87, 101 (1903) (individual stopped four days after unlawful entry had effected an entry).

Defendants' next assert Plaintiffs' contention that the phrase "seeking admission" limits the scope of § 1225(b)(2)(A) cuts against commonality because individuals like, for example, Plaintiff Guevara-Alcantar, who applied for a U-Visa, or an individual who applies for cancellation of removal, or who is granted Temporary Protected Status (TPS), "took an affirmative action to obtain admission and thus be subject to mandatory detention under § 1225(b)(2)(A) as an 'alien seeking admission.'" Defs.' Opp'n., ECF No. 32 at 12. However, Supreme Court precedent provides that a noncitizen who entered the country unlawfully and seeks and is granted relief from deportation has not been "admitted." Sanchez v. Mayorkas, 593 U.S. 409, 414 (2021). The Supreme Court's reasoning makes clear that noncitizens who entered without admission and apply for relief from deportation are only eligible for "lawful status" rather than "admission" which could confer lawful permanent residence. See id.; Guerro Orellana v. Moniz, No. 25-CV-12664-PBS, --- F. Supp. 3d ---, 2025 WL 2809996, at *7 (D. Mass. Oct. 3, 2025) ("A grant of cancellation of removal would result in [the plaintiff's] adjustment of status . . . while he remains in the United States, not his lawful entry into the country.").[10]

Moreover, while the particulars of a class member's eligibility and/or applications for lawful status may be relevant to ICE's or an IJ's analysis of whether an individual is a flight risk or should be released on bond, such varying individual factual circumstances "retain a common

---

[10] Further, the government's recently-issued policy guidance clarifies that a grant of a U-Visa is not an "admission." See U.S. Citizenship & Immigr. Servs., Policy Alert, Admission for Adjustment of Status under INA 254(a), PA-2025-25 (Nov. 3, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20251103-AOSAdmission.pdf.

core of factual or legal issues with the rest of the class," namely, whether the individual can be considered for release on bond by ICE or an IJ under § 1226(a) in the first place. Parra v. Bashas', Inc., 536 F.3d 975, 978-79 (9th Cir. 2008) ("Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."). Importantly, Plaintiffs do not seek review of the merits of their entitlement to bond, but merely their categorical eligibility for bond based on easily identifiable characteristics. See Walters, 145 F.3d at 1046 (finding commonality based on plaintiffs' common challenge to INS procedures and noting that "[d]ifferences among the class members with respect to the merits of their actual document fraud cases. . . are simply insufficient to defeat the propriety of class certification."). Therefore, the core common questions presented do not necessitate a substantial individual inquiry that would prevent a "classwide resolution." Wal-Mart, 564 U.S. at 350; see also, e.g., Evon v. L. Offs. of Sidney Mickell, 688 F.3d 1015, 1029 (9th Cir. 2012); Rodriguez Vazquez, 349 F.R.D. at 354 (rejecting the government's arguments that the impact of individual class members' circumstances on bond determinations could defeat commonality where there was a common legal question driving the litigation about whether class members were properly subject to mandatory detention under § 1225(b)(2)).

Further, the commonality standard is even more liberal in a civil rights suit, such as this one, which "challenges a system-wide practice or policy that affects all of the putative class members." Gonzalez v. United States Immigr. & Customs Enf't, 975 F.3d 788, 808 (9th Cir. 2020) (citation omitted). Indeed, "class suits for injunctive or declaratory relief" like this case, "by their very nature often present common questions satisfying Rule 23(a)(2)." Wright & Miller, supra, § 1763.

Finally, commonality is easily satisfied where this Court has granted relief to dozens of similarly situated individuals by incorporating the same legal reasoning to answer the common legal question of whether § 1225(b)(2)(A) applies to such individuals, while the government has repeatedly used the same legal reasoning to defend their statutory interpretation by incorporating their previous briefing by reference. See supra, Section I at 1 n.1. This Court's own docket adjudicating dozens of individual habeas petitions by putative class members demonstrates that

the relief Plaintiffs seek will resolve the common legal question posed by the litigation as to all class members "in one stroke." <u>Dukes,</u> 564 U.S. at 350. Plaintiffs thus satisfy the commonality requirement of Rule 23(a)(2).

### iii. *Typicality*

Rule 23(a)(3) requires that Named Plaintiffs' claims are "typical of the claims . . . of the class" as a whole. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." <u>Parsons v. Ryan</u>, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." <u>Small v. Allianz Life Ins. Co. of N.A.</u>, 122 F.4th 1182, 1201-02 (9th Cir. 2024), <u>cert. denied</u>, 145 S. Ct. 2852 (2025). "Whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct inform the analysis." <u>Gonzalez</u>, 975 F.3d at 809 (citation modified) (citation omitted).

Named Plaintiffs are typical of the proposed class for the same reasons they share common questions of law and fact with the class. <u>See Dukes</u>, 564 U.S. at 349 n. 2 (noting that, in the context of Rule 23(b)(2) classes, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge"). Like every member of the class, Named Plaintiffs are noncitizens who reside in the United States and entered without admission, were most recently intercepted and arrested by ICE agents within the interior, rather than upon arriving in the country, were deemed inadmissible as noncitizens "present in the United States without admission" by ICE/DHS under 8 U.S.C. § 1182, are placed in standard removal proceedings and not subject to expedited removal proceedings, and are not subject to mandatory detention under 8 U.S.C. § 1226(c). Pursuant to the challenged policies, they suffer the common injury of being classified by Defendants as categorically ineligible for release on bond under § 1225(b)(2)(A). "The named plaintiffs thus allege the same or a similar injury as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course

of conduct at the center of the class claims." <u>Parsons</u>, 754 F.3d at 685.

As discussed above, the government's contention that individual differences among Named Plaintiffs and class members destroys typicality is unavailing. "It does not matter that the named plaintiffs may have in the past suffered varying injuries . . . Rule 23(a) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." <u>Id.</u> at 686; <u>see also</u> <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 985 n.9 (9th Cir. 2011) ("Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality."). For that reason, potential differences as to the circumstances of Named Plaintiffs' arrest, detention, eligibility for relief from removal or lawful status, and their individualized eligibility for release on bond based on findings by an IJ regarding dangerousness or flight risk, do not destroy typicality.

### iv.  *Appointment of Class Counsel*

Named Plaintiffs have established that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? If either answer is no, the representative is inadequate." <u>Small</u>, 122 F.4th at 1202 (citation modified).

Named Plaintiffs are motivated to pursue this action on behalf of others like themselves, who, based on the government's new policy, are or will be subject to detention without the opportunity to seek release on bond. Kagan Decl. ¶¶ 39, 40, ECF No. 15-2. They understand their responsibilities as class members and are willing and able to perform them. <u>See</u> <u>Loc. Jt. Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy met where the class representative "indicates clearly that he understands his duties and is currently willing and able to perform them. The Rule does not require more."). Moreover, because Plaintiffs bring claims only for declaratory relief and set aside of Defendants' policies under the APA, and do not seek money damages, there is no potential conflict between the interests of Named Plaintiffs and class members. <u>See</u>, <u>e.g.</u>, <u>Rodriguez Vazquez</u>, 349 F.R.D. at 362 (finding

no potential conflict of interest where class representative "has a 'mutual goal' with the other class members to challenge" Defendants' unlawful policies and practices and obtain relief that would "remedy the injury suffered by all current and future class members."); Guerrero Orellana, 2025 WL 3033769, at *10-11 (finding a common interest among named class representatives and the class in challenging the government's uniform policies of imposing mandatory detention on them during the pendency of removal proceedings).

Named Plaintiffs' counsel are also qualified to serve as class counsel. Rule 23(c)(1)(B) states that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g)(1) provides the Court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1).

American Civil Liberties Union Foundation (ACLU) Immigrants' Rights Project, ACLU of Nevada, and University of Nevada, Las Vegas, Boyd School of Law (UNLV) Immigration Clinic serve as counsel for Named Plaintiffs and seek to be appointed as class counsel. The Court finds counsel has deep knowledge of immigration law, extensive experience litigating class actions and complex federal cases, including nationwide class actions and cases involving the rights of detained noncitizens, and they have the necessary resources, expertise, and commitment to adequately prosecute this case on behalf of Named Plaintiffs and the proposed class. See 15-1, Sadmira Ramic Declaration ("Ramic Decl.") ¶¶ 2-19; Kagan Decl. ¶¶ 2-6, ECF Nos. 15-1, 15-2. Accordingly, the Court finds Named Plaintiffs have satisfied the adequacy of representation requirement under Rule 23(a)(4) and appoints their counsel as class counsel under Rule 23(g).

### 2. Rule 23(b)(2)

When a proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is maintainable under Rule 23(b). DZ Reserve v. Meta Platforms, Inc., 96 F.4th 1223, 1232 (9th Cir. 2024) (noting that if the Court finds a class satisfies the requirements of Rule

23(a), it must next determine the class "fit[s] into at least one of three categories outlined in Rule 23(b)"). A class is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate responding the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Gonzalez, 975 F.3d at 812.

As the Ninth Circuit stated in Smith v. Los Angeles Unified School Dist., 830 F.3d 843 (9th Cir. 2016), "[c]ourts have long recognized the benefits conferred by the class action mechanism over numerous individual actions[,]" id. at 863, particularly in civil rights actions like this one where a government practice or policy is at issue. Parsons, 754 F.3d at 686-87 (stating primary purpose of Rule 23(b)(2) "has always been the certification of civil rights class actions."). The Court finds that Plaintiffs satisfy Rule 23(b)(2) because they seek a single declaratory judgment and corresponding set aside relief under APA § 706(2) based on a finding that Defendants' policies in the Lyons Memo and Hurtado are unlawful as applied to class members.

### i.  8 U.S.C. § 1252(f)(1) – Impermissible Restraint

Defendants contend the proposed class does not satisfy Rule 23(b)(2) because § 1252(f)(1) prohibits the Court from granting the requested class-wide declaratory relief and setting aside Defendants' policies under the APA, and insist that individual habeas actions, not a class action, are the correct vehicles to resolve Plaintiffs' claims. These arguments are unavailing.

8 U.S.C. § 1252(f)(1), as enacted in the INA,[11] provides that:

> In general. Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II [8 U.S.C. §§ 1221 et seq.], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.

---

[11] Omnibus Consolidated Appropriations Act of 1997, Pub. L. No. 104-208, Div. C, § 306(a)(2), 110 Stat. at 3009–611–12 (1996); See NTPSA III, at *9 n.9 ("we rely on the enacted text, which differs slightly from the U.S. Code version located at 8 U.S.C. § 1252") (citation omitted).

1   Defendants argue that Plaintiffs, in seeking declaratory relief and under § 706 of the APA,

2   effectively seek to enjoin or restrain the government from detaining individuals whom it believes

3   are subject to mandatory detention under § 1225(b)(2)(A). As a result, Defendants contend, §

4   1252(f)(1) bars the Court from awarding the relief sought as to all class members, making

5   certification inappropriate.

6   　　As an initial matter, based on the Ninth Circuit's most recent decision addressing §

7   1252(f)(1), it is not clear that even injunctive relief based on Plaintiffs' claims would be precluded

8   by § 1252(f)(1). "Where a petitioner seeks to enjoin conduct that is not even authorized by the

9   statute, the court is not enjoining the operation of part IV of subchapter II, and § 1252(f)(1)

10  therefore is not implicated." NTPSA III, 2026 WL 226573, at *9 (affirming the continued viability

11  of the Ninth Circuit's previous holding that "§ 1252(f)(1) did not affect our jurisdiction over

12  statutory claims because those claims did not 'seek to enjoin the operation of the immigration

13  detention statutes, but to enjoin conduct not authorized by the statutes.'") (alterations in original)

14  (quoting Rodriguez v. Hayes, 591 F.3d 1105 (9th Cir. 2010)). Similarly, the Ninth Circuit recently

15  affirmed that Courts retain jurisdiction to grant class-wide injunctive relief on constitutional

16  grounds under § 1252(f)(1), and Plaintiffs bring a Fifth Amendment Due Process Claim. See id.

17  (citing Jennings v. Rodriguez, 583 U.S. 281, 312 (2018)).

18  　　In any case, Plaintiffs seek certification under Rule 23(b)(2) for declaratory and set aside

19  relief under § 706 of the APA, and neither are barred by § 1252(f)(1). While the Supreme Court

20  has interpreted § 1252(f)(1) to prohibit class wide injunctive relief regarding the operation of §§

21  1225 and 1226, see Garland v. Aleman Gonzalez, 596 U.S. 542 (2022), it has not extended §

22  1252(f)(1) to other forms of relief including declaratory relief and set aside relief under the APA.

23  See Biden v. Texas, 597 U.S. 785, 798–99 (2022) (Section 1252(f)'s "title . . . makes clear the

24  narrowness of its scope"); A.A.D.C., 525 U.S. at 481 (By its plain terms, § 1252(f)(1) "is nothing

25  more or less than a limit on injunctive relief.").

26  　　Binding Ninth Circuit precedent forecloses Defendants' argument that § 1252(f)(1) bars

27  classwide declaratory relief. See Al Otro Lado v. Exec. Off. for Immigr. Rev., 138 F.4th 1102,

28  1124-25 (9th Cir. 2025) (affirming that "§ 1252(f)(1) does not 'bar classwide declaratory relief.'")

1   (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1119 (9th Cir. 2010)), cert. granted on other grounds

2   sub nom. Noem v. Al Otro Lado, No. 25-5, --- U.S. ---, 2025 WL 3198572 (U.S. Nov. 17, 2025).

3       Likewise, § 1252(f)(1) does not bar courts from setting aside agency action under § 706(2)

4   of the APA.[12] Immigr. Defs. L. Ctr. v. Noem, 145 F.4th 972, 989–90 (9th Cir. 2025) (holding §

5   1252(f)(1) does not bar stays or other forms of relief under the APA); Natl. TPS All. v. Noem, ---

6   F.4th ---, No. 25-5724, 2025 WL 2661556, at *3 (9th Cir. Sept. 17, 2025) (NTPA III) (holding §

7   1252(f)(1) does not apply to the setting aside of an agency decision under § 706(2) of the APA).

8   As recently as January 28, 2206, the Ninth Circuit unequivocally affirmed that that set aside relief

9   under § 706 is not barred by § 1252(f)(1). NTPSA III, 2026 WL 226573, at *9-11. "As Justice

10  Kavanaugh explained, the vacatur or set aside of agency action under the APA is a distinct remedy

11  from an injunction." Id. at *11. "Textually, it would be difficult to square the plain meaning of a

12  'set aside'—to 'cancel, annul, or revoke'—with the plain meaning of an injunction— 'a judicial

13  order that 'tells someone what to do or not to do.'" Id. (citations omitted).

14      "By its plain terms, a set aside" under § 706 of the APA "does not affect the Government's

15  future actions." Id. "It merely declares that a past agency action was unlawful and returns the world

16  to the status quo, before that unlawful action." Id. "A set aside under § 706 of the APA does not

17  enjoin or restrain the [agency officials] from doing anything." Id. (citing Aleman Gonzalez, 596

18  U.S. at 548-49. The government is free to "enforce, implement, or otherwise carry out" §§ 1225

19  and 1226. Id. (citing Aleman Gonzalez, 596 U.S. at 548). By setting aside the Lyons Memo and

20  Hurtado, a "district court" would do "no more than return the country to the status quo." Id. "To

21  hold that the narrow limitation of § 1252(f)(1), see Biden v. Texas, 597 U.S. at 798, bars relief

22  under § 706 would nullify the checks Congress placed" on the government's authority to detain

23  noncitizens without bond under §§ 1225 and 1226. Id. "It would also leave no legal recourse for"

24  detained noncitizens where the executive branch engages in blatant violations of the government's

25

26      [12] Defendants' only acknowledgement that Plaintiffs seek set aside relief under the APA is
    the statement, without argument or support, that "setting aside [Defendants'] policy as unlawful .
27  . . would effectively compel Defendants" and thereby run afoul of Aleman Gonzalez." See Defs.'
    Opp'n., ECF No. 32 at 16. However, they make no effort to explain that statement, given that
28  Aleman Gonzalez did not address relief under the APA, nor do they address the fact that their
    argument is foreclosed by Ninth Circuit precedent as discussed above.

limited detention authority under the INA. Id. "Congress did not intend such an absurd result." Id. (quoting Aleman Gonzalez, 596 U.S. at 571 (Sotomayor, J., concurring in part)). "And . . . 'Congress knows . . . how to limit relief under the APA in other statutory schemes,' and chose not to do so here." Id. (quoting Immigr. Defs., 145 F.4th at 990). "Set aside relief under the APA is thus not barred by § 1252(f)(1)." Id.

Defendants also suggest in a footnote that the class fails to meet the requirements of Rule 23(b)(2) because class members would need to bring individual habeas petitions to obtain injunctive relief enforcing any declaratory judgment. See Defs' Opp'n, ECF No. 32 at 22 n.6. There is no requirement that declaratory and injunctive relief be sought together under Rule 23(b)(2). See 7AA Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1775 (3d ed.) (Rule 23(b)(2)'s requirement for either "final injunctive relief or corresponding declaratory relief" does not require that both forms of relief be sought and a class action seeking solely declaratory relief may be certified under subdivision (b)(2)); see also Dukes, 564 U.S. at 360 (2011). Moreover, a declaratory judgment "shall have the force and effect of a final judgment or decree," 28 U.S.C. § 2201(a), and it is generally expected that the federal government will comply with such a judgment. See Sanchez-Espinoza v. Raegan, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985) (Scalia, J.) ("[I]t must be presumed that federal officers will adhere to the law as declared by the court."). To the extent Defendants intend not to comply with any declaratory judgment that their policies are unlawful, that demonstrates the necessity and appropriateness of set aside relief under § 706(2) of the APA.

Similarly, Defendants argument that individual habeas petitions are the appropriate vehicle for the resolution of the class claims fails.[13] The relief available through habeas is distinct from the relief Plaintiffs seek here—declaratory relief regarding the lawfulness of Defendants *policies*, not relief from unlawful executive detention *per se*, and set aside of those policies under the APA.

---

[13] Defendants assert that a class action is inappropriate in habeas, citing Justice Alito's dissent in A.A.R.P. v. Trump, 154 S.Ct. 1034, 1036 (2025) (Alito, J., dissenting), while acknowledging binding Ninth Circuit precedent holding that a class action may lie in habeas. See Rodriguez v. Hayes, 591 F.3d 1105, 1117 (9th Cir. 2010). However, while Plaintiffs could pursue a habeas class, they are in fact not seeking certification of a habeas class nor seeking habeas relief on behalf of the class, as discussed above.

1    While habeas relief would ultimately require release from detention (*i.e.*, an order that Defendants

2    immediately release class members or provide them with a bond hearing on a specified date),

3    Plaintiffs are only challenging the legality of Defendants' *policies* reflected in the Lyons Memo

4    and Hurtado decision. They seek to clarify their rights under the INA and restore agency practice

5    to the *status quo* as it was prior to the Lyons Memo and the BIA's adoption of Hurtado—thereby

6    ensuring Defendants' detention of noncitizens pending removal proceedings in the District of

7    Nevada complies with § 1226(a), its implementing regulations, and due process. Thus, Plaintiffs

8    do not seek "core habeas" relief. Cf. Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) ("Because

9    neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas

10   corpus.'") (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).

11        Because the Court finds Plaintiffs satisfy Rules 23(a) and 23(b)(2), they have established

12   their "categorical" right to pursue their claims as a class. See Shady Grove Orthopedic Assocs.,

13   P.A. v. Allstate Ins. Co., 599 U.S. 393, 398 (2010).

14

15   **VI.    CONCLUSION**

16        For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' (ECF No. 15)

17   Motion to Certify Class and Appoint Class Counsel is **GRANTED**. The Court **CERTIFIES** the

18   Class defined as follows:

19              All noncitizens in the U.S. without lawful status (1) who are or will
                be arrested or detained by ICE; (2) who are or will be in removal
20              proceedings before an Immigration Court within the District of
                Nevada; (3) whom DHS alleges or will allege to have entered the
21              United States without inspection or parole; (4) who are not or will
                not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1),
22              or 1231 at the time they are scheduled for or request a bond hearing;
                and (5) whose most recent arrest by ICE occurred inside the United
23              States and not while arriving in the United States.

24        **IT IS FURTHER ORDERED** that Plaintiffs Victor Kalid Jacobo Ramirez and Edgar

25   Michel Guevara Alcantar are appointed as representatives of the Class, and that their counsel,

26   American Civil Liberties Union Foundation Immigrants' Rights Project, American Civil Liberties

27   Union of Nevada, and the UNLV Boyd School of Law Immigration Clinic ("UNLV Immigration

28   Clinic") are appointed as class counsel for the Class.

**IT IS FURTHER ORDERED** that Plaintiffs' partial motion for summary judgement, as discussed at the December 19, 2025 hearing and status conference, see ECF No. 59, is due on or before **February 13, 2026**. Defendants' opposition is due on or before **February 23, 2026**. Plaintiffs' reply is due on or before **February 27, 2026**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file any request for and proposed notice to class members pursuant to Fed. R. Civ Proc. 23(c)(2)(A) on or before **February 13, 2026**. Defendants may file their opposition to the proposed notice, if any, by **February 18, 2026**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a status report setting forth the information and documents they contend Defendants have not yet produced in compliance with this Court's pre-certification discovery orders by **February 13, 2026**. The status report shall specify what, if any, of the pre-certification discovery is outstanding and required post-certification

**IT IS FURTHER ORDERED** that the Parties shall file a proposed discovery plan and scheduling order pursuant to Local Rule 16-1(d) on or before **February 13, 2026**.

**DATED: February 5, 2026.**

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**